No. 2019-1256

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

KINGSTON TECHNOLOGY COMPANY, INC.

*Appellant,*

v.

SPEX TECHNOLOGIES, INC.

*Appellee.*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-01021

**RESPONSE BRIEF OF SPEX TECHNOLOGIES, INC.**

Marc A. Fenster
mfenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
Paul A. Kroeger
pkroeger@raklaw.com
RUSS, AUGUST & KABAT
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
*Counsel for Appellee*

## Certificate of Interest

Counsel for Defendant-Appellee SPEX Technologies, Inc. certifies the following:

1. The full name of every party represented by me: SPEX Technologies, Inc.

2. The name of the real parties in interest represented by me: Not Applicable.

3. SPEX Technologies, Inc. does not have any parent corporations, and no publicly held company owns 10 percent or more of stock in SPEX Technologies, Inc.

4. The names of all law firms and the partners or associates that appeared for SPEX Technologies, Inc. before the United States Patent and Trademark Office, or are expected to appear in this Court are: Marc A. Fenster, Benjamin T. Wang, Adam S. Hoffman, Paul A. Kroeger, Andrew D. Weiss, Justin Maio, and Jacob R. Buczko of Russ August & Kabat; and Vincent J. Rubino, III, Alfred R. Fabricant; Enrique W. Iturralde, and Peter Lambrianakos of Brown Rudnick LLP.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this Court's decision in the pending appeal: *Kingston Technology Company, Inc. v.*

*SPEX Technologies, Inc.*, CAFC Case No. 19-1342 and 19-1599; *SPEX Technologies Inc. v. Kingston Technology Corp.*, CACD Case No. 8:16-CV-01790-JVS (ARGx); *SPEX Technologies Inc. v. Western Digital Corp.*, CACD Case No. 8:16-CV-01799-JVS (ARGx); *SPEX Technologies Inc. v. Toshiba America Electronics Components, Inc.*, CACD Case No. 8:16-CV-01800 (ARGx); *SPEX Technologies, Inc. v. Apricorn*, CACD Case No. 2:16-CV-07349 JVS (ARGx).

Dated: June 12, 2019

By: */s/ Marc A. Fenster*

Marc A. Fenster
mfenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
Paul A. Kroeger
pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Counsel for Appellee SPEX TECHNOLOGIES, INC.*

**TABLE OF CONTENTS**

CERTIFICATE OF INTEREST ........ i

TABLE OF AUTHORITIES ........ iii

STATEMENT OF RELATED CASES ........ v

INTRODUCTION ........ 1

STATEMENT OF THE ISSUES ........ 2

STATEMENT OF THE CASE ........ 3

I. The '135 patent ........ 3

II. Jones ........ 5

III. Other prior art ........ 6

IV. The IPR proceedings ........ 6

A. The Board declines to institute review of claims 55-57 based on Jones ........ 6

B. Following institution on claims 55-57, Kingston attempts to revive its anticipation argument with supplemental briefing and evidence ........ 8

C. The Board issues its Final Written Decision upholding the patentability of claims 55-57 ........ 10

1. The Board finds that Jones does not anticipate claims 55 and 56 under any of Kingston's theories ........ 10

2. The Board finds that Jones does not anticipate claim 57 ........ 15

SUMMARY OF THE ARGUMENT ........ 16

STANDARD OF REVIEW ........ 17

ARGUMENT ........ 18

I. This Court should affirm the Board's decision upholding the patentability of claims 55 and 56 ........ 18

A. The Board properly considered inherency in its anticipation analysis ........ 19

1. Substantial evidence supports the Board's conclusion that Jones does not *expressly* disclose the "receiving" and "providing" steps of claim 55 ........ 20

2. Because Jones does not expressly disclose the "receiving" and "providing" steps, the Board properly analyzed whether Jones *inherently* discloses them ........ 25

B. The Board applied the correct legal standard for inherency ........ 26

C. The Board did not ignore the alleged "admissions" by SPEX's litigation expert ........ 33

II. This Court should affirm the Board's decision upholding the patentability of claim 57 ........ 36

III. The Board's decision correctly focused on the disclosure of Jones in finding that it does not anticipate claims 55-57 ........ 39

CONCLUSION ........ 41

CERTIFICATE OF SERVICE ........ 43

CERTIFICATE OF COMPLIANCE ........ 44

## TABLE OF AUTHORITIES

**Cases**


*Advanced Display Sys., Inc. v. Kent State Univ.*,
212 F.3d 1272 (Fed. Cir. 2000) .......... 21

*Altaire Pharms., Inc. v. Paragon Bioteck, Inc.*,
889 F.3d 1274 (Fed. Cir. 2018) .......... 38

*Arendi S.A.R.L. v. Apple Inc.*,
832 F.3d 1355 (Fed. Cir. 2016) .......... 27

*Broadcom Corp. v. Int'l Trade Comm'n*,
542 F.3d 894 (Fed. Cir. 2008) .......... 28

*CRFD Research, Inc. v. Matal*,
876 F.3d 1330 (Fed. Cir. 2017) .......... 17

*Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*,
881 F.3d 1354 (Fed. Cir. 2018) .......... 18, 41

*Endo Pharms. Solutions, Inc. v. Custopharm Inc.*,
894 F.3d 1374 (Fed. Cir. 2018) .......... 27

*Eolas Techs. Inc. v. Microsoft Corp.*,
399 F.3d 1325 (Fed. Cir. 2005) .......... 19

*Finnigan Corp. v. Int'l Trade Comm'n*,
180 F.3d 1354 (Fed. Cir. 1999) .......... 26

*Fujitsu Ltd. v. Netgear Inc.*,
620 F.3d 1321 (Fed. Cir. 2010) .......... 28

*Icon Health & Fitness, Inc. v. Strava, Inc.*,
849 F.3d 1034 (Fed. Cir. 2017) .......... 41

*In re Cree, Inc.*,
818 F.3d 694 (Fed. Cir. 2016) .......... 18, 41

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .......... 38

*In re NTP, Inc.*,
654 F.3d 1279 (Fed. Cir. 2011) .......... 17, 41

*In re Robertson*,
169 F.3d 743 (Fed. Cir. 1999) .......... 27

*In re Warsaw Orthopedic, Inc.*,
832 F.3d 1327 (Fed. Cir. 2016) .......... 17, 41

*Net MoneyIN, Inc. v. VeriSign, Inc.*,
545 F.3d 1359 (Fed. Cir. 2008) .......... 7

*Novartis AG v. Torrent Pharms. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) .......... 34

*Personal Web Techs., LLC v. Apple, Inc.*,
917 F.3d 1376 (Fed. Cir. 2019) .......... 27

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
665 F.3d 1269 (Fed. Cir. 2012) .......... 24

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
299 F.3d 1313 (Fed. Cir. 2002) .......... 23

*Verdegaal Bros., Inc. v. Union Oil of Cal.*,
814 F.2d 628 (Fed. Cir. 1987) .......... 19

**Statutes**

35 U.S.C. § 102 .......... 20

35 U.S.C. § 112 .......... 24

35 U.S.C. § 316(e) .......... 18

## Statement of Related Cases

No other appeal in or from the same proceeding was previously before this Court or any other appellate court. Counsel is aware of the following cases before this Court and federal district courts that could be affected by this appeal: *Kingston Technology Company, Inc. v. SPEX Technologies, Inc.*, CAFC Case No. 19-1342 and 19-1599; S*PEX Technologies Inc. v. Kingston Technology Corp*., CACD Case No. 8:16-CV-01790-JVS (ARGx); *SPEX Technologies Inc. v. Western Digital Corp*., CACD Case No. 8:16-CV-01799-JVS (ARGx); *SPEX Technologies Inc. v. Toshiba America Electronics Components, Inc.*, CACD Case No. 8:16-CV-01800 (ARGx); *SPEX Technologies, Inc. v. Apricorn*, CACD Case No. 2:16-CV-07349 JVS (ARGx).

## INTRODUCTION

The Board's decision upholding the patentability of claims 55-57 of the '135 patent is supported by substantial evidence and should be affirmed. Kingston's argument that the Jones reference anticipates these claims is critically flawed because Jones simply does not teach every recited limitation. The Board correctly recognized this in initially deciding not to institute *inter partes* review of claims 55-57.

But Kingston was given a second chance when the Board instituted review of all challenged claims following the *SAS Institute* decision. Ever since, Kingston has been trying to overcome Jones's deficient disclosure. Indeed, recognizing that its initial petition lacked teaching of all elements of the asserted claims, Kingston requested supplemental briefing that it used to present *new* arguments and *new* evidence that purported to show a different view of how one of skill in the art would understand the disclosure of Jones. These new arguments and evidence included a selection of excerpts from multiple different PCMCIA standards documents, as well as statements made by SPEX's expert in co-pending litigation, Dr. V. Thomas Rhyne. The Board properly rejected both Kingston's original and supplemental arguments.

Contrary to the record, Kingston argues that the Board did not consider Kingston's supplemental arguments and evidence. The Board, however, fully

considered all of Kingston's new arguments and evidence, and questioned the parties extensively at the oral hearing about the supplemental materials. After weighing the evidence, the Board correctly concluded that Kingston failed to prove that Jones anticipates claims 55-57.

There was nothing erroneous about the Board's decision. All of the conclusions reached by the Board were supported by substantial evidence (or the lack of evidence supporting Kingston's assertions). As the Final Written Decision notes, Kingston's analysis of Jones and the PCMCIA documents was flawed and, in some instances, misleading. While Kingston alleges that the Board "willfully ignored" key evidence, the record makes clear that the Board in fact considered the "key evidence" among Kingston's myriad arguments about inherency, incorporation by reference, and Dr. Rhyne's alleged admissions.

Kingston's arguments ring hollow because the Board followed the law and reached a decision that is supported by substantial evidence. This Court should affirm.

## STATEMENT OF THE ISSUES

I. Whether substantial evidence supports the Board's finding that Jones does not render claims 55 and 56 unpatentable because Kingston failed to show that Jones discloses the claimed "receiving" and "providing" steps.

II. Whether substantial evidence supports the Board's finding that Jones does not render claim 57 unpatentable because Kingston failed to show that Jones discloses the claimed "communicating" and "performing . . . the defined interaction" steps.

## STATEMENT OF THE CASE

### I. The '135 patent

U.S. Patent No. 6,003,135 ("the '135 patent") is directed to solving security problems that plague portable computing devices. At the time of the '135 patent's filing, such devices were known to connect with host devices (*e.g.*, desktop computers) to enable users to access and communicate data but were also susceptible to security breaches. Appx72 at 1:29-45. Despite industry efforts to increase security using cryptography, such systems remained susceptible to unauthorized use and modification of "thought to be secured" data. *Id.* at 2:16-20. The '135 patent addresses these challenges of prior art systems while also balancing the competing priorities of controlling access and maintaining an open platform that allows seamless connectivity and data transfer. *E.g.*, Appx73 at 3:48-4:1.

Figures 1 and 2 of the '135 patent depict prior art systems:




FIG. 1
(PRIOR ART)




FIG. 2
(PRIOR ART)

Appx62. In the prior art, security operations were performed either by the host computer (as shown in Figure 1 with the security mechanism 101a included in host computing device 101), or by a standalone security device (as shown in Figure 2 as security device 203). Appx72 at 1:57-58, 2:21-31.

Both arrangements presented significant security challenges. For example, prior art systems like that shown in Figure 1 were susceptible to unauthorized persons gaining knowledge of the security mechanism's operation (*e.g.*, discovering the cryptographic key), particularly because host computing devices generally are "intentionally made open so that components made by different manufacturers can work together seamlessly." Appx72 at 2:9-20. Prior art systems like that shown in Figure 2 can overcome this problem by moving the security mechanism out of the host computer, but such a system requires extra devices (which may be inconvenient and cumbersome), and may still not be secure because, for example, the host system

may (intentionally or not) fail to make use of the separate security device, leaving data unsecured and subject to attack. Appx72 at 2:48-67; Appx73 at 3:1-14.

The '135 patent overcame these problems by providing a novel modular security device that combines the security device with the portable device of the prior art. *E.g.*, Appx73 at 3:17-27. The modular security device of challenged claims 55-57 includes a security module adapted to enable security operations to be performed on data and a target module adapted to enable a defined interaction with the host computing device. Appx84 at 26:12-53; *see also* Appx73 at 3:28-31.

## II. Jones

PCT Application WO 95/16238 ("Jones") discloses a "memory card 100 that is interconnected with a host computer 110 by means of a hardware and software interface which conforms to the Personal Computer Memory Card International Association (PCMCIA) standard." Appx313 at 4:5-8. Jones specifically references the "PC Card ***Standard*** Specification, Release 2.01, published in November, 1992" but includes no mention of the "PC Card ***Services*** Specification, Release 2.0" document that Kingston submitted to the Board with its Supplemental Brief. Appx314 at 5:22-23 (emphasis added). These PCMCIA documents describe a number of mandatory and optional features, and Jones does not specify which of these features were implemented in the disclosed memory card.

Jones seeks to ameliorate problems associated with the loss or theft of PCMCIA memory cards by password-protecting the cards. Appx311 at 2:18-27; Appx313 at 4:19-23. The memory card 100 stores data in a common memory array 150 (Appx313 at 4:29-32) and includes an attribute memory 190 that only "stores information enabling the host computer to automatically identify the particular PCMCIA card as soon as the card and host are connected, and to automatically establish the appropriate hardware/software interface using suitable driver software which executes on the host computer 110." Appx314 at 5:24-29.

## III. Other prior art

SPEX disagrees with Kingston's characterization of "other pieces of prior art" as allegedly teaching limitations of claims 55-57 (*e.g.*, Blue Brief at 22-23). However, SPEX does not address these references here because they are immaterial to this appeal.

## IV. The IPR proceedings

### A. The Board declines to institute review of claims 55-57 based on Jones

Kingston filed a petition for *inter partes* review challenging claims 55-58 of the '135 patent (the "Petition"). Appx1799. The Board instituted as to claim 58 but denied institution of every ground challenging claims 55-57. Appx722-723. Notably, no portion of the PCMCIA standard was submitted with the Petition, including the exhibits.

For claims 55 and 56, the Board agreed with SPEX that Kingston did not "sufficiently, persuasively explain how Jones's disclosure of a memory card that 'stores information enabling [a] host computer to automatically identify the particular . . . card as soon as the card and host are connected, and to automatically establish [an] appropriate hardware/software interface'" teaches or suggests the "receiving a request" and "providing . . . in response to the request" steps of claim 55. Appx708 (quoting Appx314 at 5:24-29). The Board further explained that "Jones's statement that the card includes information enabling the host to 'automatically' identify the card 'as soon as the card and host are connected' suggests not only that receipt of a request is unnecessary, but also that the information is not provided 'in response to [a] request,'" as claim 55 requires. *Id.*

The Board also was "not persuaded by [Kingston's] alternative argument based on a device driver 'directly interrogat[ing] the CIS structures in the attribute memory.'" *Id.* (quoting Appx1817). As the Board noted, "Jones describes that as separate from the embodiment relied upon by [Kingston] as disclosing all other limitations of claim 55, whereas anticipation requires that all of the limitations be arranged or combined in the same way in the prior art as recited in the claim." Appx708-709 (citing *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1371 (Fed. Cir. 2008)). As a result, the Board declined to institute review of claims 55 and 56 based on Jones. Appx722.

For claim 57, the Board found that Kingston did not identify "any disclosure in Jones of 'communicating . . . to exchange data between [a] host computing device and [a] modular device.'" Appx710. Instead, the Board found that "the only disclosure [Kingston] identifies in Jones of any such communication is the transfer of data between host computer 110 and data storage 150 that [Kingston] relies upon as corresponding to the step of 'performing . . . the defined interaction on the exchanged data.'" Appx710-711. The Board concluded that "because [Kingston] does not identify any disclosure in Jones of 'communicating . . . to exchange data' as a step separate from the exchange alleged to teach the 'perform[ance of] . . . the defined interaction,' [Kingston] has not established a reasonable likelihood of prevailing in showing that Jones anticipates or renders obvious the subject matter of claim 57." Appx711.

### B. Following institution on claims 55-57, Kingston attempts to revive its anticipation argument with supplemental briefing and evidence

Following the Supreme Court's decision in *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018), the Board issued an order modifying its Institution Decision and instituting review of all claims and grounds, including Kingston's argument that Jones anticipates claims 55-57. Appx2.

Soon thereafter, the Board allowed Kingston to submit supplemental briefing and exhibits regarding the PCMCIA standard and statements made by SPEX's

expert, Dr. Rhyne, in parallel district court proceedings. Appx2-3. With respect to claims 55 and 56, Kingston sought to remedy Jones's deficiencies by supplementing with new Exhibit 1017—a series of excerpts from multiple different PCMCIA standards documents. *See, e.g.*, Appx1564-1621 (header "PCMCIA PC Card Standard"); Appx1623-1630 (header "PCMCIA Card Services Specification"). Kingston argued that these excerpts are effectively incorporated by reference into or inherently part of Jones's disclosure, thus allowing Jones to anticipate the missing "receiving" and "providing" steps of claim 55. *See* Appx1011; Blue Brief at 45. But even assuming *arguendo* that these excerpts teach what Kingston alleges, Jones does not mention, let alone incorporate by reference the one document ("PCMCIA Card Services Specification") that Kingston relies upon for these disputed limitations. Kingston also argued that Dr. Rhyne "admitted" at his deposition that Jones teaches these steps of claim 55 and "incorporates the teachings of the PCMCIA standard." Appx1011. But Dr. Rhyne gave no such testimony; opposing counsel's questions to Dr. Rhyne focused on the scope of possible disclosures within the PCMCIA standard generally, and they were not asked in the context of the Jones reference or the specific pages of the PCMCIA documents excerpted in Exhibit 1017.

For claim 57, Kingston argued in its Supplemental Brief that Dr. Rhyne's infringement opinions in the co-pending litigation prove that Jones anticipates claim 57. Appx1016-1018. As the Board later found, though, this was nothing more than

"new argument and new invalidity theories not presented or relied upon in the Petition." Appx33.

### C. The Board issues its Final Written Decision upholding the patentability of claims 55-57

Following the supplemental briefing and oral hearing, the Board issued its Final Written Decision upholding the patentability of claims 55-57. Appx59. In its decision, the Board details the parties' key arguments and the substantial evidence supporting its findings.

#### 1. The Board finds that Jones does not anticipate claims 55 and 56 under any of Kingston's theories

The Board found that Jones could not anticipate claims 55 and 56 because it neither expressly nor inherently discloses the claimed steps of "receiving a request" and "providing . . . in response to the request":

> Because Jones does not *expressly* disclose the receiving and providing steps of claim 55, it was Petitioner's burden to show that those steps were necessarily present, i.e., that they were inherently disclosed. Petitioner has not met that burden here.

Appx27 (emphasis in original). The Board considered but ultimately was not persuaded by four arguments offered by Kingston in the Petition and supplemental papers: (1) Jones itself expressly discloses the "receiving" and "providing" steps; (2) Jones incorporates by reference the PCMCIA standard and therefore expressly discloses the claimed steps; (3) Jones inherently discloses the claimed steps to one of ordinary skill in the art because Jones refers to the PCMCIA standard; and (4) Dr.

Rhyne "admitted" in litigation that Jones effectively discloses the claimed steps because it discloses a PCMCIA-compliant memory card.

As to Kingston's ***first*** argument, the Board noted its analysis in the Institution Decision that Jones's embodiments "with Card Services" involve "a memory card that 'stores information enabling [a] host computer to automatically identify the particular . . . card as soon as the card and host are connected, and to automatically establish [an] appropriate hardware/software interface.'" Appx20 (quoting Appx314 (Jones) at 5:24-29). The Board recognized that "automatically" identifying "suggests not only that receipt of a request is unnecessary, but also that the information is not provided 'in response to [a] request,'" as claim 55 requires. Appx20. The Board also found that Kingston could not pick and choose teachings from Jones's "with Card Services" and "without Card Services" embodiments to cobble together an anticipatory disclosure, since Jones specifically describes them as separate embodiments and "anticipation requires that all of the limitations be arranged or combined in the same way in the prior art as recited in the claim." *Id*.

As to Kingston's ***second*** argument, the Board noted SPEX's observation that Kingston never identified any incorporation by reference in the Jones disclosure. Appx26. The Board also questioned Kingston about this issue at the oral hearing, leading Kingston to admit that Jones at least does not contain explicit incorporation-by-reference language. *E.g.*, Appx1743-1744 (stating "I don't dispute that there's no

statement that says 'incorporated by reference'" and "it's not technically incorporated by reference in the way that you do another patent or an unrelated technical disclosure").

As to Kingston's ***third*** argument, the Board concluded that Jones would not inherently disclose the claimed "receiving" and "providing" steps even if the PCMCIA documents submitted by Kingston as Exhibit 1017 were effectively part of Jones's disclosure. Appx27. This is because, for example, the GetTupleData and GetConfigurationInfo commands that Kingston maps to the "receiving" and "providing" steps are not "*necessarily* involved in the 'automatic[] identif[ication]' recited by Jones" that Kingston maps to claim 55. *Id*. (emphasis in original). The Board observed that Exhibit 1017 includes only incomplete excerpts, "leaving the record devoid of any evidence of what was not included in the provided excerpts." Appx29.

The Board also criticized as "particularly substantial" Kingston's misleading description of Exhibit 1017. Appx28. In its Supplemental Brief, Kingston described Exhibit 1017 as including excerpts from "PCMCIA PC Card Standard," which Jones references in its disclosure. Appx1008; Appx314 at 5:22-23 ("PC Card Standard Specification, Release 2.01"); Appx317 at 8:28 ("PCMCIA PC Card Standard, Release 2.01"). But, as the Board recognized, Kingston failed to mention "PC Card ***Services*** Specification" in its description of Exhibit 1017, a document that Jones

does not reference and that Kingston relies upon as allegedly teaching the claimed "receiving" and "providing" steps. Appx22 n.11 (noting that Kingston "incompletely described Exhibit 1017 in its Exhibit List"); Appx28 (emphasizing that "[Kingston's] omission from its description of Exhibit 1017 of any reference to the PC Card Services Specification . . . is particularly substantial"). The Board explained that "[Kingston's] arguments in its Supplemental Brief and at the oral hearing were premised in substantial part on the fact that Jones contains explicit references to the PCMCIA PC Card Standard, Release 2.01," which says nothing about the GetTupleData and GetConfigurationInfo commands relied upon by Kingston. Appx28.

This was not Kingston's only omission. The Board also considered Kingston's argument that "[w]hen a PCMCIA card is inserted into a host computer, the computer ***needs to*** 'process a [PCMCIA] Card's Card Information Structure to determine if and how [it] will interact with a card detected in a socket." Appx1013 (quoting Appx1623, a portion of Exhibit 1017) (emphasis added). When the Board reviewed the context of Kingston's partial quote, it discovered that Kingston had omitted key language undermining its inherency argument:

> [W]e find that the quoted portion of the PC Card Services Specification, in context, does not include such mandatory language. Rather, the complete sentence from which Petitioner abstracted the quoted language, and a following explanatory parenthetical, state: "Card Services clients *may* need to process a PC Card's Card Information Structure (CIS) to determine if and how they will interact with a card

> detected in a socket. (*Some clients may receive all the information they require from the CARD_INSERTION event*).” Ex. 1017, 68 (italics added). The complete quotation suggests that the described functions that follow—including later in the same paragraph [about] the use of the GetTupleData command relied upon by Petitioner—are not necessarily required.

Appx29 (quoting Appx1623) (emphasis added by Board).

And as to Kingston’s ***fourth*** argument, the Board considered all of the alleged “admissions” of Dr. Rhyne that Kingston identified in its Supplemental Brief, explicitly referencing each one in the Final Written Decision, as shown in the table below:

| Pg. in Supp. Br. | Pg. in FWD | J.A. Cite | Tr. Cite (Ex. 1014) |
|---|---|---|---|
| Appx1011 | Appx23 | Appx1268 at ll. 15-17 | 162:15-17 |
| Appx1011 | Appx23 | Appx1387 at ll. 16-24 | 281:16-24 |
| Appx1012 | Appx23 | Appx1241 at ll. 4-10 | 135:4-10 |
| Appx1012 | Appx23 | Appx1243 at ll. 18-22 | 137:18-22 |
| Appx1012 | Appx23 | Appx1395 at ll. 20-24 | 289:20-24 |
| Appx1014 | Appx24 | Appx1205 at ll. 21-24 | 99:21-24 |
| Appx1014 | Appx24 | Appx1397 at ll. 18-21 | 291:18-21 |
| Appx1017 | Appx32 | Appx1297 at ll. 12-16 | 191:12-16 |

The Board also based its decision on the oral hearing, which Kingston admits “largely focused on the supplemental evidence submitted by Kingston,” including Dr. Rhyne’s deposition testimony. Blue Brief at 35. The Board also acknowledged SPEX’s responses to this testimony, including that “[Kingston’s] characterization of Dr. Rhyne’s PCMCIA testimony amounts to a gross overstatement” and that the

testimony cited by Kingston reflects statements about PCMCIA generally, rather than the disclosure of Jones. Appx25.

#### 2. The Board finds that Jones does not anticipate claim 57

In analyzing claim 57, the Board first noted its Institution Decision finding that the only disclosure in Jones that Kingston identified for the claimed "performing . . . the defined interaction" step was also mapped to the claimed "communicating" step. Appx31. In denying institution, the Board agreed with SPEX that claim 57 recites these two steps as separate limitations, such that Kingston had not established a reasonable likelihood that Jones is anticipatory. Appx31-32.

The Board then considered Kingston's arguments about Dr. Rhyne's infringement allegations in co-pending litigation, specifically that "mass storage" could map to the claimed "defined interaction" of claim 57. Appx32-33. The Board agreed with SPEX that "[Kingston's] Supplemental Brief presents new argument and new invalidity theories not presented or relied upon in the Petition." Appx33. The Board also noted that it "d[id] not find in the Petition any mapping of 'storage of data' to the communicating and performing steps of claim 57." *Id.* As a result, the Board concluded that Jones does not anticipate claim 57. Appx34.

## SUMMARY OF THE ARGUMENT

This Court should affirm the Board's decision that claims 55-57 have not been shown to be unpatentable. The Board's conclusions are legally sound and supported by substantial evidence. Kingston's criticisms of the Board's decision are unwarranted and should be rejected.

Kingston argues that the Board committed reversible error with respect to claims 55 and 56 by (1) considering inherency in its anticipation analysis at all, (2) applying an overly strict standard for inherency, and (3) ignoring alleged "admissions" made by Dr. Rhyne. The Board committed no such errors. Because it determined that Jones does not expressly disclose the "receiving" and "providing" steps of claim 55, the Board rightly considered whether Jones inherently discloses these limitations. The Board then applied the proper legal standard for inherency, analyzing whether Jones *necessarily* discloses the claimed steps. Kingston identifies no authority establishing that this legal standard is wrong. And as to the third alleged "error," the Board did not ignore Dr. Rhyne's alleged "admissions." In fact, the Board not only granted Kingston supplemental briefing so that it could present this new evidence, but the Board also questioned the parties extensively about it at the oral hearing and cited every identified piece of testimony in its Final Written Decision. The Board properly exercised its discretion in weighing the facts and evidence, ultimately reaching a decision that is supported by substantial evidence.

Kingston also contends that the Board erred in its analysis of claim 57. While Kingston argues that the Board "willfully ignored the explicit teachings of Jones," the record shows that the Board expressly analyzed the purported teachings identified by Kingston but found critical deficiencies in Jones's disclosure. Blue Brief at 38; *see* Appx30-34. Kingston also argues that the Board "willfully ignored . . . how SPEX had interpreted the scope of its claim in district court," pointing to statements made by Dr. Rhyne in an expert report. Blue Brief at 38. As with Dr. Rhyne's deposition testimony, the Board considered Kingston's argument about this evidence but agreed with SPEX that it amounted to an improper new invalidity theory not disclosed in the Petition. Following the Board's rules that hold Kingston accountable to the contents of its Petition is not "willfully ignor[ing]" new evidence. Because the Board's decision on claim 57 was also supported by substantial evidence, this Court should affirm.

**STANDARD OF REVIEW**

This Court reviews the Board's factual findings for substantial evidence, and the Board's legal conclusions *de novo*. *CRFD Research, Inc. v. Matal*, 876 F.3d 1330, 1340 (Fed. Cir. 2017).

Under the "substantial evidence" standard, this Court "may not reweigh facts already considered by the PTAB." *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1334 (Fed. Cir. 2016) (citing *In re NTP, Inc.*, 654 F.3d 1279, 1292 (Fed. Cir. 2011)).

Rather, if two "inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB]'s decision to favor one conclusion over the other is the epitome of a decision that ***must*** be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (quoting *In re Cree, Inc.*, 818 F.3d 694, 701 (Fed. Cir. 2016)) (emphasis added).[1]

## ARGUMENT

### I. This Court should affirm the Board's decision upholding the patentability of claims 55 and 56

Kingston contends the Board erred in three ways when it upheld the patentability of claims 55 and 56: (1) by considering the inherency doctrine at all; (2) by applying an overly strict standard for inherency; and (3) by ignoring alleged admissions by SPEX's litigation expert. Blue Brief at 38. All three arguments should be rejected.

---

[1] As the petitioner, Kingston had the sole burden of establishing the unpatentability of claims 55-57. Accordingly, the Board's determination that Kingston failed to meet this burden should more appropriately be reviewed under the abuse of discretion standard and affirmed because the patentee did not carry any burden to present evidence, substantial or otherwise. While substantial evidence may properly be required to uphold a finding in favor of a petitioner (who carries the burden of proof before the PTAB), that same standard should not apply for a patentee who carries no such burden. Holding otherwise improperly creates a burden of proof for the patentee contrary to the express statutory requirement for *inter partes* reviews. *See* 35 U.S.C. § 316(e). Nonetheless, the Board's factual findings are supported by substantial evidence and should be affirmed under that standard as well.

The Board allowed Kingston every opportunity to make its case that Jones anticipates claims 55 and 56 but nonetheless found Kingston's arguments unavailing. The Board thoroughly considered Jones's express and inherent teachings, and even allowed supplemental briefing on the same evidence that Kingston now says the Board "ignored." *Id*. Kingston's disagreement with the Board's factual findings is no cause for reversal. As detailed in this Section, the Board's analysis was legally sound, and its conclusions are supported by substantial evidence.

### A. The Board properly considered inherency in its anticipation analysis

Kingston argues that "the Board erred in turning to inherency at all" in analyzing whether Jones anticipates claims 55 and 56. Blue Brief at 41. To the contrary, the Board's analysis was proper and gave full consideration to Kingston's anticipation argument.

A claim is anticipated under 35 U.S.C. § 102 "only if each and every element as set forth in the claim is found, either ***expressly*** or ***inherently*** described, in a single prior art reference." *Verdegaal Bros., Inc. v. Union Oil of Cal.*, 814 F.2d 628, 631 (Fed. Cir. 1987) (emphasis added). "Anticipation is a question of fact, which this [C]ourt reviews for substantial evidence." *Eolas Techs. Inc. v. Microsoft Corp.*, 399 F.3d 1325, 1332 (Fed. Cir. 2005). In any event, since the Board found no express teaching of multiple limitations in Jones, would still have reached the same result

even if it had not considered inherency. Kingston's argument, if accepted only provides a further basis for affirmance.

### 1. **Substantial evidence supports the Board's conclusion that Jones does not *expressly* disclose the "receiving" and "providing" steps of claim 55**

The Board first analyzed whether Jones expressly discloses the disputed limitations of claim 55 (and its dependent claim 56). The Board concluded that "Jones does not *expressly* disclose the receiving and providing steps of claim 55." Appx27 (emphasis in original). Kingston can disagree with the Board's determination, but it remains a factual finding supported by substantial evidence.

In its Final Written Decision, the Board describes in detail the arguments and evidence presented by the parties, explaining that it considered "the Petition, Response, and Supplemental Briefing, as well as the presented evidence and supplemental information." Appx14. As just one example, the Board describes Kingston's theory that embodiments of Jones supporting PCMCIA Card Services enable the host computer to automatically identify the particular PCMCIA card as soon as the card and host are connected. Appx18. The Board rejected Kingston's argument, quoting from its Institution Decision in explaining that "Jones's statement that the card includes information enabling the host to automatically identify the card as soon as the card and host are connected suggests not only that receipt of a request is unnecessary, but also that the information is not provided in response to [a]

request." Appx20 (internal quotation marks omitted). This is substantial evidence supporting the Board's conclusion that Jones does not expressly disclose the claimed "receiving a request" and "providing . . . in response to the request" steps of claim 55. Other such evidence is detailed throughout the Board's anticipation analysis. *See, e.g.*, Appx18-27.

Recognizing this deficiency in Jones, Kingston tried to revive its failed anticipation argument by improperly supplementing Jones with select teachings from multiple PCMCIA standards documents. Kingston offers no cogent argument as to why these select teachings are part of Jones. They are not specifically discussed in Jones, and Kingston admitted that they are not explicitly incorporated by reference into Jones. *E.g.*, Appx1743-1744 (stating "I don't dispute that there's no statement that says 'incorporated by reference'" and "it's not technically incorporated by reference in the way that you do another patent or an unrelated technical disclosure"); *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) (an incorporation by reference requires a reference to "identify with detailed particularity what specific material it incorporates and clearly indicate where that material is found in the various documents" of the incorporated material). Jones's mere description of a PCMCIA-compliant memory card, without any mention of "specific material it incorporates," does not meet this exacting standard. *Advanced Display Sys.*, 212 F.3d at 1282. Yet Kingston continues to imply that the

disclosure of Jones includes all teachings from all PCMCIA standards documents, regardless of whether they are implicated by the functionality Jones describes. *See, e.g.*, Blue Brief at 45 (stating that "Jones did not need to expressly detail the entirety of the PCMCIA specification in its written description in order for a skilled artisan to understand that the contents of the specification are *part of* the teachings of Jones" (emphasis added)). Because Kingston's argument has no legal or factual basis, this Court should reject it, as the Board did.

Kingston's apparent fallback position (not articulated anywhere in its Petition or expert declaration) is that Jones still anticipates because the knowledge of one of ordinary skill in the art[2] at the time of the '135 patent would supply the missing claim elements not taught by Jones. Blue Brief at 44-46. Kingston argued at the oral hearing that this person of ordinary skill "would understand the operation of a PCMCIA without needing to go to another reference" and would therefore understand Jones as disclosing the claimed "receiving" and "providing" steps. Appx1754 at ll. 14-17; *see also* Appx1750 at ll. 22-25. But, as the Board recognized, Jones teaches an automatic identification process that logically would not include these claimed steps. *See, e.g.*, Appx20 ("Jones's statement that the card includes

[2] Kingston agreed to accept, and the Board adopted, the level of ordinary skill proposed by SPEX (*see* Appx13), namely "a bachelor's degree in electrical engineering, computer engineering, or a related field, and at least one year of working experience in data storage systems or electronic data security." Appx736.

information enabling the host to automatically identify the card as soon as the card and host are connected suggests not only that receipt of a request is unnecessary, but also that the information is not provided in response to [a] request." (internal quotation marks omitted)). Even setting aside such contradictory teachings, Kingston cannot simply pick and choose various features discussed in multiple different PCMCIA standards documents to fill the gaps of Jones. *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1335 (Fed. Cir. 2002) ("Although we have permitted the use of additional references to confirm the contents of [an] allegedly anticipating reference, we have made clear that anticipation does not permit an additional reference to supply a missing claim limitation." (citation omitted).

In further pressing this argument, Kingston relies upon a comparison between the specifications of Jones and the '135 patent that is fundamentally flawed and was not raised in the Petition. For example, Kingston contends that the Board should have found anticipation because "[t]he '135 specification explains that the 'receiving' and 'processing' steps can be accomplished using methods set out by the PCMCIA standard, and Jones discloses the exact same thing to the same level of detail." Blue Brief at 44. According to Kingston, the Board "erred in requiring more" detail from the specification of Jones than the '135 patent specification provides. *Id.* Kingston is wrong for multiple reasons.

***First***, Kingston's argument ignores the language of claim 55, which explicitly requires "receiving a request . . . for information regarding the type of the modular device" and "providing the type of the target module . . . in response to the request." Appx84 at 26:18-21. In accordance with 35 U.S.C. § 112, the '135 patent (particularly in light of the mandatory language of claim 55) "teach[es] those skilled in the art how to make and use the full scope of the claimed invention without 'undue experimentation.'" *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F.3d 1269, 1288 (Fed. Cir. 2012) (internal quotation marks omitted). One of ordinary skill seeking to practice the invention of claim 55 with a PCMCIA card would know—without undue experimentation—that specific features described in the PCMCIA standard ***must*** be implemented in order to practice the claimed "receiving" and "providing" steps. This is true even if those features are optional (*i.e.*, not mandatory) under the PCMCIA standard. In contrast, Jones's disclosure imposes no such requirement, and nothing in the record establishes that the allegedly anticipating PCMCIA features relied upon by Kingston are mandatory under the standard. As a result, one of ordinary skill in the art reading Jones would not know that such PCMCIA teachings would need to be implemented, as the Board acknowledged in finding no inherent disclosure. *See* Appx27.

***Second***, the Board held Jones to the proper standard for anticipation, requiring it to disclose every element of the challenged claims. The Board fully considered

Jones and found that it failed to disclose the "receiving" and "providing" steps of claim 55 because, for example, Jones's disclosure of "automatically identifying" a specific PCMCIA card as soon as the card and host are connected "suggests not only that receipt of a request is unnecessary, but also that the information is not provided in response to [a] request." Appx20 (internal quotation marks omitted). This disclosure of Jones is not "the exact same thing" as what claim 55 requires or the '135 patent discloses. The Board recognized such distinctions and found that Jones does not expressly disclose the claimed "receiving" and "providing" steps. Appx27.

#### 2. Because Jones does not expressly disclose the "receiving" and "providing" steps, the Board properly analyzed whether Jones *inherently* discloses them

After concluding that Jones does not expressly disclose the "receiving" and "providing" steps of claim 55, the Board correctly considered inherency and likewise found no inherent disclosure of these steps:

> Because Jones does not *expressly* disclose the receiving and providing steps of claim 55, it was Petitioner's burden to show that those steps were necessarily present, i.e., that they were inherently disclosed. Petitioner has not met that burden here.

Appx27 (emphasis in original). As discussed above, the Board considered the parties' arguments and evidence in its anticipation analysis, including on the specific issue of inherency. *See* Appx18-29. Based on this information, the Board made a factual determination that Jones does not inherently disclose the claimed "receiving"

and "providing" steps. *See Finnigan Corp. v. Int'l Trade Comm'n*, 180 F.3d 1354, 1362 (Fed. Cir. 1999) ("Whether a claim limitation is inherent in a prior art reference for purposes of anticipation is . . . a question of fact."). The Board's inherency finding was supported by substantial evidence and should be affirmed.

Kingston contends that it was "legal error" for the Board to even consider inherency in analyzing anticipation (Blue Brief at 41), but cites no case law indicating this was legally improper. After finding no express disclosure, the Board understood that the only way Jones could anticipate claims 55 and 56 would be if Jones inherently disclosed the missing steps. It was not legal error for the Board to consider inherency, but if Kingston were correct, the Board's finding of no express disclosure would fully support its ruling and Kingston's arguments about the standard for inherency would be irrelevant.

### B. The Board applied the correct legal standard for inherency

Kingston argues that the Board committed reversible legal error when it "misapplied" the test for inherency, allegedly holding Kingston to an "overly-strict" standard. Blue Brief at 38, 47-50. Kingston does not appear to contest the Board's articulation of the inherency legal standard (Appx11-12) but alleges that the Board held Kingston to a higher standard here. According to Kingston, "the Board ignored common sense inferences from the Jones reference and ignored uncontroverted evidence from the PCMCIA standards, justifying its decision to do so by pointing to

the standard for inherency." *Id.* at 49. Kingston's argument is unsupported by legal precedent or facts. The Board did not "ignore" Kingston's arguments and evidence; it merely found them unpersuasive. Appx27-30.

As an initial matter, "common sense inferences" are irrelevant to the inherent anticipation analysis. "To establish that a prior art reference inherently—rather than expressly—discloses a claim limitation, the limitation at issue ***necessarily must be present***, or [is] the natural result of the combination of elements explicitly disclosed by the prior art." *Endo Pharms. Solutions, Inc. v. Custopharm Inc.*, 894 F.3d 1374, 1381 (Fed. Cir. 2018) (internal quotation marks omitted) (emphasis added); *see also Personal Web Techs., LLC v. Apple, Inc.*, 917 F.3d 1376, 1382 (Fed. Cir. 2019) (reversing IPR finding of unpatentability based on inherency because it was only "possible" the prior art used the disputed claim element and "mere possibility is not enough"); *In re Robertson*, 169 F.3d 743, 745 (Fed. Cir. 1999) (explaining that inherency "may not be established by probabilities or possibilities") (internal quotation marks omitted)). The Board properly considered what Jones ***necessarily*** discloses (*e.g.*, Appx27-29), and Kingston cannot circumvent this strict legal standard for inherency with appeals to "common sense." *See Arendi S.A.R.L. v. Apple Inc.*, 832 F.3d 1355, 1362 (Fed. Cir. 2016) ("[R]eferences to 'common sense' . . . cannot be used as a wholesale substitute for reasoned analysis and evidentiary support.").

In any event, Kingston does not even articulate what specific "common sense inferences" the Board allegedly ignored, but it seems to suggest the Board should have inferred from Jones's disclosure of a PCMCIA-compliant memory card that Jones practices every single feature described in every PCMCIA standards document, including the select excerpts Kingston cites. Blue Brief at 49. There is no evidence in the record that such an inference is warranted (let alone necessary), as even the PCMCIA excerpts relied upon by Kingston describe optional commands (*e.g.*, GetTupleData) that "are not necessarily required." Appx29. It is common for standards to describe both mandatory and optional features. *See, e.g.*, *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1327-28 (Fed. Cir. 2010) ("[T]he relevant section of the standard is optional, and standards compliance alone would not establish that the accused infringer chooses to implement the optional section."); *Broadcom Corp. v. Int'l Trade Comm'n*, 542 F.3d 894, 899 (Fed. Cir. 2008) (rejecting argument that accused networks necessarily infringed because they were "EV-DO-compliant," where EV-DO standard distinguished between mandatory and optional features and accused feature was not necessarily implemented). The record shows that Jones teaches "automatic" device identification, and the Board properly recognized this as suggesting that the optional PCMCIA commands relied upon by Kingston are not necessarily present in Jones and therefore not inherently disclosed. Appx27-29.

Kingston's argument that the Board "ignored uncontroverted evidence from the PCMCIA standards" is also unavailing. Blue Brief at 49. The record shows that the Board closely considered Kingston's evidence but found it unpersuasive. For example, the Board assumed *arguendo* that Exhibit 1017 includes excerpts from the specific "'PC Card Standard, Release 2.01' referenced by Jones," but nonetheless found insufficient evidence that the standard's "disclosure of information stored in attribute memory of a secure memory card" means that Jones's memory card necessarily performs the claimed "receiving" and "providing" steps. Appx27. In its Supplemental Brief, Kingston argued that these claimed steps are disclosed by user-specified functions called GetTupleData and GetConfigurationInfo, which are discussed in "a separate portion of Exhibit 1017 . . . bearing the header 'PC Card Services Specification, Release 2.0'" and ***may*** be implemented in a callback. Appx24. But there is no evidence that these commands are mandated by the PCMCIA standard, and while the Board explicitly considered Kingston's alleged "uncontroverted evidence from the PCMCIA standards," the Board was "not persuaded that either command is *necessarily* involved in the 'automatic[] identif[ication]' recited by Jones." Appx27 (emphasis in original).[3]

---

[3] Although Kingston submitted only excerpts of the PCMCIA documents comprising Exhibit 1017, the Board fully considered these excerpts in its anticipation analysis.

As further confirmation that the Board closely considered Kingston's evidence, the Board actually criticized Kingston for its description of Exhibit 1017. Kingston described Exhibit 1017 in its Supplemental Brief as containing excerpts from one PCMCIA document ("PCMCIA PC ***Card Standard***"), but Exhibit 1017 also includes excerpts from another distinct PCMCIA document ("PC ***Card Services*** Specification"). Appx1008 (emphasis added); *see also* Appx1564-1621 (header "PCMCIA PC Card Standard"); Appx1623-1630 (header "PCMCIA Card Services Specification"). Notably, Jones only refers to the first document and never references the second document. *E.g.*, Appx314 at 5:22-23 ("PC Card Standard Specification, Release 2.01"); Appx317 at 8:28 ("PCMCIA PC Card Standard, Release 2.01"). Yet Kingston's anticipation argument is based on excerpts from the uncited second document, "PC Card Services Specification." *See* Appx28 (noting that the excerpts relied upon for the GetTupleData and GetConfigurationInfo commands "are from what appears to be the PCMCIA PC Card Services Specification, Release 2.0").

---

The Board found that these excerpts included no evidence that the commands Kingston relied upon would necessarily apply to Jones's PCMCIA-compliant card. Appx28 ("Without the complete versions of these documents or persuasive evidence that the GetTupleData and GetConfigurationInfo commands provided the only means by which a PCMCIA-compliant card could have provided module type information to a host, we can only speculate as to what else might be disclosed in them.").

The Board criticized as "particularly substantial" the omission of this discrepancy in Kingston's Supplemental Brief and oral hearing argument. *Id*. "[Kingston's] omission . . . is particularly substantial, given that [Kingston's] arguments in its Supplemental Brief and at the oral hearing were premised in substantial part on the fact that Jones contains explicit references to the PCMCIA PC Card Standard, Release 2.01"); *see also* Appx22 n.11 (noting that Kingston "incompletely described Exhibit 1017 in its Exhibit List in its Supplemental Brief"). In other words, contrary to "ignoring" the evidence presented, the Board not only considered the evidence but analyzed the documents closely enough to realize that Exhibit 1017 was actually a conglomeration of two different documents, and that Kingston incorrectly implied they were excerpts of a single document referenced by Jones.

Indeed, this was not the only misleading omission the Board discovered. Kingston argued in its Supplemental Brief that "[w]hen a PCMCIA card is inserted into a host computer, the computer ***needs to*** 'process a [PCMCIA] Card's Card Information Structure to determine if and how [it] will interact with a card detected in a socket." Appx1013 (quoting Appx1623) (emphasis added). Not taking Kingston's characterization of this feature as mandatory at face value, the Board examined the context of Kingston's partial quote and discovered that it omitted key language:

> [W]e find that the quoted portion of the PC Card Services Specification, in context, does not include such mandatory language. Rather, the complete sentence from which Petitioner abstracted the quoted language, and following explanatory parenthetical, state: "Card Services clients *may* need to process a PC Card's Card Information Structure (CIS) to determine if and how they will interact with a card detected in a socket. (*Some clients may receive all the information they require from the CARD_INSERTION event*)." Ex. 1017, 68 (italics added). The complete quotation suggests that the described functions that follow—including later in the same paragraph [about] the use of the GetTupleData command relied upon by Petitioner—are not necessarily required.

Appx29 (quoting Appx1623) (emphasis added by Board). Again, directly contrary to Kingston's argument that the Board "ignored" evidence, the Board considered Kingston's argument and evidence in such detail that it was able to make a factual determination that the evidence contradicted Kingston's argument.

The Board did not "ignore" Kingston's evidence about PCMCIA features. In making its factual determination on anticipation, the Board considered the incomplete documents submitted by Kingston (some of which Jones does not even mention, let alone incorporate by reference) and even examined the broader context of material that Kingston cited and selectively quoted. Ultimately, the Board was not persuaded, but its decision was reasoned and supported by substantial evidence. This is not reversible legal error.

### C. The Board did not ignore the alleged "admissions" by SPEX's litigation expert

Kingston alleges that the Board "ignored" "SPEX's litigation expert's admissions" in determining that Jones does not disclose the claimed "receiving" and "providing" steps of claim 55. Blue Brief at 38. Kingston's criticism of the Board is belied by the record and unsupported by law. As even Kingston admits, "[t]he oral hearing held by the Board largely focused on the supplemental evidence submitted by Kingston," demonstrating the Board's consideration of the same material that Kingston now says the Board "ignored." Blue Brief at 35. The Final Written Decision also makes clear that the Board considered, summarized, and weighed both parties' arguments and evidence, ultimately supporting its decision on claims 55 and 56 with substantial evidence.

As an initial matter, there is no reason to parse the Final Written Decision as Kingston suggests. According to Kingston, only pages Appx27-30 describe material that the Board considered in upholding the patentability of claims 55 and 56. Blue Brief at 52. But the section of the Final Written Decision containing this discussion actually spans over ten pages. *See, e.g.*, Appx18-30. Kingston's true complaint appears to be that the Board did not explicitly state, for example, "we considered every piece of Dr. Rhyne's testimony cited by Kingston but find them unpersuasive." But the absence of such a statement is not sufficient to establish that the Board ignored the evidence, let alone that it committed reversible error. *See, e.g.*, *Novartis*

*AG v. Torrent Pharms. Ltd.*, 853 F.3d 1316, 1327-28 (Fed. Cir. 2017) ("[F]ailure to explicitly discuss every issue or every piece of evidence does not alone establish that the tribunal did not consider it. The Board is not require[d] . . . to address every argument raised by a party or explain every possible reason supporting its conclusion." (internal quotation marks and citations omitted)). And in any event, it does not matter that the Board did not include such explicit statements because every piece of Dr. Rhyne's testimony that Kingston identified in its Supplemental Brief is specifically referenced in the Board's decision, as summarized below:

| Pg. in Supp. Br. | Pg. in FWD | J.A. Cite | Tr. Cite (Ex. 1014) |
|---|---|---|---|
| Appx1011 | Appx23 | Appx1268 at ll. 15-17 | 162:15-17 |
| Appx1011 | Appx23 | Appx1387 at ll. 16-24 | 281:16-24 |
| Appx1012 | Appx23 | Appx1241 at ll. 4-10 | 135:4-10 |
| Appx1012 | Appx23 | Appx1243 at ll. 18-22 | 137:18-22 |
| Appx1012 | Appx23 | Appx1395 at ll. 20-24 | 289:20-24 |
| Appx1014 | Appx24 | Appx1205 at ll. 21-24 | 99:21-24 |
| Appx1014 | Appx24 | Appx1397 at ll. 18-21 | 291:18-21 |
| Appx1017 | Appx32 | Appx1297 at ll. 12-16 | 191:12-16 |

In addition, the Final Written Decision explains that the Board considered "the Petition, Response, and Supplemental Briefing, as well as the presented evidence and supplemental information," which included Dr. Rhyne's deposition transcript. Appx14. Accordingly, there is every indication that the Board did consider Dr.

Rhyne's testimony, as well as all of the other supplemental evidence, but found it unpersuasive.

Compounding the flaws in Kingston's argument is the fact that Kingston cites in its Opening Brief to three excerpts from Dr. Rhyne's testimony that Kingston ***never cited to the Board***. *See* Blue Brief at 51 (citing to Appx1166 at ll. 10-20, Appx1166 at l. 24 to Appx1167 at l. 24, and Appx1241 at l. 15 to Appx1242 at l. 3). The Board was not obligated to search through a nearly 300-page deposition transcript to develop Kingston's arguments, and the Board cannot have erred based on evidence not before it. Kingston's assertion that the Board ignored this previously uncited evidence suggests that Kingston is merely attempting to reargue its anticipation case *de novo*, which is not the standard applied here.

Ultimately, the Board was not persuaded that Jones teaches the "receiving" and "providing" steps of claim 55. In its weighing of the evidence, the Board explicitly considered Kingston's arguments about Dr. Rhyne's deposition testimony and the testimony itself. *See, e.g.*, Appx22-23 (detailing Kingston's arguments and cited testimony). But the Board also considered SPEX's counterarguments and evidence, including that Kingston had stripped Dr. Rhyne's testimony from its context and that "[i]t would be improper to draw conclusions about components of the Jones disclosure based on the concepts of PCMCIA generally, unless those concepts are disclosed in [a] reference that was explicitly incorporated by reference

or inherent in Jones." Appx25 (quoting Appx1657). As discussed above, the Board also explicitly found that Kingston's PCMCIA excerpts did not establish that the commands Kingston relied upon to show "receiving" and "providing" would necessarily apply to Jones's PCMCIA-compliant card. *See* Appx27-28. Even if Dr. Rhyne's statements were the critical "admissions" that Kingston alleges, it cannot be said that the Board "ignored" them.

## II. This Court should affirm the Board's decision upholding the patentability of claim 57

As to claim 57, Kingston argues that the Board "willfully ignored the explicit teachings of Jones and how SPEX had interpreted the scope of its claim in district court," specifically in Dr. Rhyne's infringement expert report. Blue Brief at 38. Kingston is wrong, and this argument should be rejected.

There are two disputed limitations of claim 57: (1) "communicating with the host computing device to exchange data between the host computing device and the modular device," and (2) "performing one or more security operations and the defined interaction on the exchanged data." Appx84 at 26:41-46. In denying institution on claim 57, the Board found that "the only disclosure [Kingston] identified in Jones" that could teach the "communicating" step "is the transfer of data between host computer 110 and data storage 150 that [Kingston] relies upon as corresponding to the step of 'performing . . . the defined interaction on the exchanged data.'" Appx31. Because claim 57 explicitly separates these limitations, the Board

agreed with SPEX that "the 'defined interaction on the exchanged data' cannot simply be the transfer of data that satisfies the 'communicating . . . to exchange data' step." Appx31-32 (quoting Appx711).

Following the *SAS Institute* decision, the Board instituted review of all challenged claims and later allowed Kingston to submit supplemental briefing and exhibits addressing SPEX's positions in district court. Appx2-3. The same arguments and evidence that Kingston raises now were included in its Supplemental Brief and were considered by the Board. *See* Appx32-33. In particular, Kingston argued that Dr. Rhyne's infringement expert report identified "'mass storage' – *i.e.* the transfer and storage of data" as the claimed "'defined interaction' in the accused storage devices." Appx32 (quoting Appx1017). Kingston further contended that Dr. Rhyne's report also identified "mass storage" for the "communicating" step, "arguing that because the accused products were 'data storage device[s],' they infringed this element." *Id.* According to Kingston, SPEX "cannot argue that claim limitations can be met by transfer and storage of data for infringement purposes, then deny that transfer or storage of data is sufficient to anticipate these elements." Appx33 (quoting Appx1017).

The Board explicitly considered these arguments and determined that they amounted to "new invalidity theories not presented or relied upon in the Petition." Appx33. The Board correctly found in the Petition no "mapping of 'storage of data'

to the communicating and performing steps of claim 57." *Id.* The Board further explained: "Whether or not [SPEX] in district court litigation asserted that 'data storage' may, itself, be a 'defined interaction' within the meaning of that term in claim 57, that position was not presented in the Petition, and constitutes impermissible new argument." Appx34.

The Board did not abuse its discretion in rejecting Kingston's new invalidity theory as unsupported by the Petition. Indeed, this Court has held that the Board ***cannot*** consider such theories. *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1381 (Fed. Cir. 2016) (rejecting the Board's reliance on unpatentability arguments that "could have been included" in the petition but were not). Kingston cites no case law establishing that such a determination is an abuse of discretion. Instead, Kingston's only cited case merely recognizes that the Board has "broad discretion" but "that discretion is not without limits." Blue Brief at 53 (quoting *Altaire Pharms., Inc. v. Paragon Bioteck, Inc.*, 889 F.3d 1274, 1285 (Fed. Cir. 2018), *remand order modified by stipulation*, 738 F. App'x 1017 (Fed. Cir. 2018)). This generic statement offers no basis for overturning the Board's decision.

Even setting aside its untimeliness, Kingston's new invalidity theory also lacks merit. For example, Kingston argues that Dr. Rhyne's report "affirmatively asserted that transferring data from a host computer, encrypting that data, and then storing that data was sufficient to meet the disputed limitations of claim 57." Blue

Brief at 52. To support this statement, Kingston cites—but never quotes—three excerpts from Dr. Rhyne's report, none of which proves Kingston's point. *Id.* (citing Appx1098; Appx1093-1094; Appx1076-1077). The first excerpt (Appx1098) merely refers back to the second excerpt (Appx1093-1094), which in turn refers back to the third excerpt (Appx1076-1077). This third excerpt focuses on the following means-plus-function claim limitation from a different patent not at issue in this proceeding: "target means for enabling a defined interaction with a host computing device." Appx1076. In this excerpt of his report, Dr. Rhyne opines that, because the accused device includes flash memory that "enables the mass storage of user data from the host computing device (the user's computer), the flash memory performs the recited function" of "enabling a defined interaction with a host computing device." *Id.* This is not the "affirmative[] assert[ion]" that Kingston claims it to be, and Kingston's reluctance to quote from Dr. Rhyne's report is telling. The Board properly rejected Kingston's new invalidity theory as unsupported by the Petition, but this argument fails even on the merits.

### III. The Board's decision correctly focused on the disclosure of Jones in finding that it does not anticipate claims 55-57

Kingston concludes by arguing that "the only evidence of record—which stands unrebutted and unimpeached—shows that Jones discloses the disputed limitations on which the Board based its decision that claims 55-57 of the '135 patent

were patentable over Jones." Blue Brief at 55. This argument ignores the reality of the Board's analysis and, most importantly, ignores the actual disclosure of Jones.

As detailed above, the Board correctly found that Jones does not disclose the disputed limitations of claims 55-57. To save its anticipation argument, Kingston has tried to supplement the teachings of Jones in any way it can—incorporation by reference, inherency, the knowledge of one of ordinary skill in the art, and statements by SPEX's litigation expert. Ultimately, all of these arguments were unpersuasive. The Board found that Jones did not incorporate by reference or inherently disclose the full PCMCIA standard, and that Jones did not even reference the specific PCMCIA document relied upon by Kingston. *See, e.g.*, Appx27. The Board found that even a skilled artisan with knowledge of the PCMCIA excerpts cited by Kingston would not understand Jones to disclose the disputed limitations, including because certain features were not mandated by the standard and because Jones teaches features that appear to contradict certain teachings from the PCMCIA standard (*e.g.*, automatically identifying vs. receiving a request and providing identifying information in response to such request). *See, e.g.*, Appx20; Appx27-29. And the Board found that Kingston's arguments about Dr. Rhyne raised impermissible new invalidity theories that were unsupported by the Petition. *See, e.g.*, Appx33.

The Board thoroughly considered Kingston's arguments and evidence, including its Supplemental Brief and accompanying exhibits. Nonetheless, Kingston cannot overcome the fact that Jones simply does not disclose multiple limitations of claims 55-57 and therefore cannot anticipate them. That is the foundation for the Board's factual determination of no anticipation, and substantial evidence—including the actual disclosure of Jones that Kingston keeps trying to avoid and supplement—fully supports the Board's findings. Under the "substantial evidence" standard, this Court "may not reweigh facts already considered by the PTAB." *In re Warsaw Orthopedic*, 832 F.3d at 1334 (citing *In re NTP*, 654 F.3d at 1292; *Icon Health & Fitness, Inc. v. Strava, Inc.*, 849 F.3d 1034, 1041 (Fed. Cir. 2017) (weighing "expert testimony and other record evidence" is entirely within the PTAB's discretion) (internal citations omitted). And even if the Board could have reached another decision based on this record, its decision here should be upheld. *Elbit Sys.*, 881 F.3d at 1356 (even if "inconsistent conclusions may reasonably be drawn from the evidence in record, [the PTAB]'s decision to favor one conclusion over the other is the epitome of a decision that ***must*** be sustained upon review for substantial evidence." (quoting *In re Cree*, 818 F.3d at 701) (emphasis added)).

**CONCLUSION**

The Court should affirm the Board's decisions in full.

Respectfully submitted,

Dated: June 12, 2019

*<u>/s/ Marc A. Fenster</u>*
Marc A. Fenster
mfenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
Paul A. Kroeger
pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Counsel for Appellee SPEX TECHNOLOGIES, INC.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: June 12, 2019

By: */s/ Marc A. Fenster*

Marc A. Fenster
mfenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
Paul A. Kroeger
pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Counsel for Appellee SPEX TECHNOLOGIES, INC.*

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 27(d)(2), as this brief contains 9,273 words, excluding the parts of the brief exempted by Federal Circuit Rule 27(d).

The undersigned further certifies that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and 32(a)(6) and the Rules of this Court, as this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Mac in 14-point Times New Roman Font.

Dated: June 12, 2019

By: */s/ Marc A. Fenster*

Marc A. Fenster
mfenster@raklaw.com
Benjamin T. Wang
bwang@raklaw.com
Paul A. Kroeger
pkroeger@raklaw.com
RUSS AUGUST & KABAT
12424 Wilshire Blvd., 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991

*Counsel for Appellee SPEX TECHNOLOGIES, INC.*