**No. 2019-1256**

# United States Court Of Appeals for the Federal Circuit

**KINGSTON TECHNOLOGY COMPANY, INC.,**
***Appellant,***
***v.***

**SPEX TECHNOLOGIES, INC.,**
***Appellee.***

APPEAL FROM THE UNITED STATES PATENT AND TRADEMARK OFFICE,
PATENT TRIAL AND APPEAL BOARD IN INTER PARTES REVIEW NO. IPR2017-01021

## KINGSTON TECHNOLOGY COMPANY, INC.'s REPLY BRIEF

DAVID M. HOFFMAN, ESQUIRE
FISH & RICHARDSON PC
111 CONGRESS AVENUE, SUITE 810
AUSTIN, TX 78701
(512) 472-5070

OLIVER J. RICHARDS, ESQUIRE
FISH & RICHARDSON PC
12390 EL CAMINO REAL
SAN DIEGO, CA 92130
(858) 678-5070

*Counsel for Appellant Kingston Technology Company, Inc.*

August 2, 2019

## CERTIFICATE OF INTEREST

1. The full name of every party represented by me is: Kingston Technology Company, Inc.

2. The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is: None.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by me are: Kingston Technology Corporation.

4. The names of all law firms and the partners or associates that appeared for the party now represented by me in the trial court or agency or are expected to appear in this Court (and who have not entered an appearance in this Court) are: Law Offices of S.J. Christine Yang: Christine Yang, Martha Hopkins.

5. The title and number of any case known to counsel to be pending in this or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal: Kingston Technology Company, Inc. v. SPEX Technologies Inc., CAFC Case Nos. 19-1256, 19-1831, and 19-2008; SPEX Technologies Inc. v. Kingston Technology Corp., et al., CACD Case No. 8:16-CV-01790 JVS (ARGx); SPEX Technologies Inc. v. Western Digital Corp., et al., CACD Case No. 8:16-CV-01799 JVS (ARGx); SPEX Technologies Inc. v. Toshiba America Electronics Components, Inc., et al., CACD Case No. 8:16-CV-01800 JVS (ARGx); SPEX Technologies Inc. v. Apricorn, CACD Case No. 2:16-CV-07349 JVS (ARGx).

Dated: August 2, 2019 *_/s/ Oliver J. Richards_*

# TABLE OF CONTENTS

**Page**

INTRODUCTION........................................................................................................ 1

ARGUMENT ............................................................................................................. 3

I. The Board's Determination Regarding Claim 55 Should Be Reversed.............................................................................................. 3

A. Jones Anticipates Because It Mirrors the Enabling Disclosure Provided in the '135 Specification.................................. 3

B. The Board Erred in Its Consideration of the PCMCIA Specification........................................................................ 12

C. The Board Erred By Failing to Consider Clear Admissions Made by SPEX's Litigation Expert ............................ 19

II. The Board's Determination Regarding Claim 57 Should Be Reversed.............................................................................................. 22

CONCLUSION ........................................................................................................ 26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AK Steel Corp. v. Sollac and Ugine*,
344 F.3d 1234 (Fed. Cir. 2003) .......... 4

*In re: Baxter Travenol Labs.*,
952 F.2d 388 (Fed. Cir. 1991) .......... 8

*Belden Inc. v. Berk-Tek LLC*,
805 F.3d 1064 (Fed. Cir. 2015) .......... 14

*In re Bond*,
910 F.2d 831 (Fed. Cir. 1990) .......... 7

*Dell Inc. v. Acceleron, LLC*,
818 F.3d 1293 (Fed. Cir. 2016) .......... 14

*In re Donahue*,
632 F.2d 123 (CCPA 1980) .......... 11

*In re Donohue*,
766 F.2d 531 (Fed. Cir. 1985) .......... 8

*In re Graves*,
69 F.3d 1147 (Fed. Cir. 1995) .......... 6

*Kennametal, Inc. v. Ingersoll Cutting Tool Co.*,
780 F.3d 1376 (Fed. Cir. 2015) .......... 8

*In re Magnum Oil Tools Int'l, Ltd.*,
829 F.3d 1364 (Fed. Cir. 2016) .......... 25

*In re: May*,
574 F.2d 1082 (C.C.P.A. 1978) .......... 7

*MEHL/Biophile Intern. Corp. v. Milgraum*,
192 F.3d 1362 (Fed. Cir. 1999) .......... 18

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*,
463 U.S. 29 (1983) .......... 10, 11, 21

## TABLE OF AUTHORITIES - CONTINUED

**Page(s)**

**Cases**

*Nippon Steel Corp. v. United States*,
458 F.3d 1345 .......... 16

*Novartis AG v. Torrent Pharm. Ltd.*,
853 F.3d 1316 (Fed. Cir. 2017) .......... 20

*In re Sang Su Lee*,
277 F.3d 1338 (Fed. Cir. 2002) .......... 21

*In re: Schaumann*,
572 F.2d 312 (C.C.P.A. 1978) .......... 7, 11, 12

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
749 F.3d 1373 (Fed. Cir. 2014) .......... 9

*Synopsys, Inc. v. Mentor Graphics Corp.*,
814 F.3d 1309 (Fed. Cir. 2016) .......... 9

*Ultratec, Inc. v. CaptionCall*,
LLC, 872 F.3d 1267 (Fed. Cir. 2017) .......... 20

*Univ. of S.C. v. Univ. of S. California*,
367 F. App'x 129 (Fed. Cir. 2010) .......... 15

# INTRODUCTION

The Board's determination that claims 55 and 57 are patentable over Jones should be reversed. As to claim 55, the Board erred by requiring more detail from the prior art than provided in the written description of the '135 patent itself. Where – as here – the specification describes the disputed steps as being a known part of the prior art PCMCIA standard, it is error to require more detail than this from the prior art. That error is particularly significant as SPEX admitted in its brief that a bare reference to the PCMCIA standard in the '135 patent was sufficient to enable those same limitations. A POSITA who understands that the PCMCIA standard teaches the limitations for enablement purposes would also understand that the same teachings in the prior art anticipate them. The Board erred in concluding otherwise, and, in particular, erred by divorcing the disputed steps from the specification that supported them.

The Board instead required Kingston prove that the PCMCIA standard was an inherent part of Jones. Kingston should not have been required to prove inherency of a standard disclosed in the specification as practicing the disputed steps where the prior art explicitly references that same standard. However, even in incorrectly requiring inherency, the Board further erred by applying the an overly-strict test for inherency and by ignoring admissions by SPEX's litigation expert that a POSITA would know that the PCMCIA specification taught the disputed elements.

As to claim 57, there is no dispute that Jones teaches the disputed limitations. The Board's decision, though, did not address the substance but was premised on the erroneous conclusion that Kingston had provided a new theory of invalidity. While Kingston concedes that its original petition referred to a "memory module" rather than "data storage," the Board erred in requiring *ippsissimis verbis* support – especially where neither the Board nor SPEX identified any reason why memory is not storage. The Board's error was further compounded when it chose to ignore SPEX's statements made in litigation *after* the petition was filed. Kingston could not have included those statements in its petition, and, indeed, the supplemental information process (which the Board allowed Kingston to use) is designed to enable a petitioner to supplement the record. Once supplemented, the Board was required to consider the complete record and it was error to dismiss SPEX's litigation statements regarding the disputed limitations.

# ARGUMENT

## I. The Board's Determination Regarding Claim 55 Should Be Reversed

### A. Jones Anticipates Because It Mirrors the Enabling Disclosure Provided in the '135 Specification

The Jones reference teaches the disputed "receiving" and "providing" steps of claim 55 because it discloses the exact functionality the '135 specification relies on to disclose and enable these elements. There is no dispute that the only enabling disclosure of the "receiving" and "providing" steps provided by the '135 patent is reference to the PCMCIA standard. Indeed, SPEX concedes in its brief that these disclosures from the '135 patent are sufficient to enable the "receiving" and "providing" steps of claim 55. *See* Red Br. at 24 (arguing that "[o]ne of ordinary skill seeking to practice the invention of claim 55 with a PCMCIA card would know—without undue experimentation—that specific features described in the PCMCIA standard must be implemented in order to practice the claimed 'receiving' and 'providing' steps").

As explained in the '135 specification, the "receiving" and "providing" steps address how the claimed "modular device" of the '135 patent connects to a host computer after being plugged in. *See* Blue Br., at 9–11. The minimal discussion of this process from the specification of the '135 patent explains that the process of "receiving" a request for information from the modular device and "providing" information in response to that request are "standard" steps performed by a host

computer when a peripheral device is plugged in. *See* Appx76, at 9:45–50 (these steps are part of a "standard aspect of the operating system of the host computing device"). The specification then goes on to explain that one such standard process for "receiving" a request and "providing" information in response to that request is described by the PCMCIA specification which, according to the patent, "specifies such operation." *See* Appx76, at 10:11–22.

Neither the Board nor SPEX identified any enabling disclosure in the '135 patent for the "receiving" and "providing" steps beyond this reference to the PCMCIA specification. And, as noted above, SPEX concedes that the limitations are enabled by the reference to the PCMCIA standard. Thus, by definition, a person of ordinary skill would understand that the PCMCIA standard discloses (and enables) the "receiving" and "providing" steps. *See AK Steel Corp. v. Sollac and Ugine*, 344 F.3d 1234, 1244 (Fed. Cir. 2003) ("The enablement requirement is satisfied when one skilled in the art, after reading the specification, could practice the claimed invention without undue experimentation."). Otherwise, the claims would lack enablement and be invalid.

However, both the Board's decision below and SPEX's response brief assert that though a skilled artisan would understand how to practice the invention from this minimal disclosure in the '135 patent, a person of skill would simultaneously not understand how to practice the "receiving" and "providing" steps from an identical disclosure in the prior art. This cannot possibly be the case. As the predecessor to

this Court has explained, "the description of a single embodiment of broadly claimed subject matter constitutes a description of the invention for anticipation purposes." *Application of Lukach*, 442 F.2d 967, 970 (C.C.P.A. 1971). Thus, where a patent specifically identifies a prior art standard and explains that certain claim limitations are a known part of that standard, it is legal error for the Board to hold that disclosure of that standard in the prior art does not disclose those claim limitations. Put another way, where a patentee describes a prior art example that was already known to practice limitations of her claim, that patentee (or indeed the Board) cannot later find that same prior art example insufficient to invalidate those limitations. The patentee herself has conceded that those limitations were a known part of that prior art example, and in doing so, conceded those limitations were known to those that knew the example prior art. This is especially the case where (as here) that prior art example is relied upon as enable disclosure.

The Board, however, erred by essentially divorcing the "receiving" and "providing" steps from their disclosure in the '135 specification. Instead, as described in Kingston's opening brief, the Board required that Kingston establish the "receiving" and "providing" steps be described expressly or meet the requirements for inherency. In its brief, SPEX makes this same argument. Red Br. at 22–23 ("Kingston cannot simply pick and choose various features discussed in multiple different PCMCIA standards documents to fill the gaps of Jones.")

This argument and the Board's rationale entirely misses the point though. As Kingston explained in its opening brief, prior art references are to be read through the eyes of a skilled artisan. *See, e.g., In re Graves*, 69 F.3d 1147, 1152 (Fed. Cir. 1995) (explaining that "[a] reference anticipates a claim if it discloses the claimed invention 'such that a skilled artisan could take its teachings, in combination with his own knowledge of the particular art and be in possession of the invention'" (emphasis in original)). Where – as here – it is conceded in the specification (and by the patent owner) that a POSITA would know that the PCMCIA standard teaches the "receiving" and "providing" steps, disclosure of that standard is disclosure of the "receiving" and "providing" steps. Looking to the prior art, Jones explicitly states that its invention is compliant with the PCMCIA specification. *See* Appx314. Thus, the only question is what a skilled artisan understands when Jones says that the device is compliant with PCMCIA. In most cases, the knowledge of a person of ordinary skill would likely be a source of argument and dispute among the parties. However, in this case, it is not. SPEX concedes it, and the Board, did not dispute that it was in its decision.

To be clear, although SPEX attempts to cast Kingston's disagreement with the Board as factual and despite SPEX's conclusory allegation (at 25) that the disclosure of Jones is different, SPEX does not identify any substantive differences between the disclosure from the '135 specification it says is enabling and what is taught by Jones. Nor could SPEX. Jones's discussion of how the PCMCIA standard provides for a

device to connect to a host computer is at least as detailed as that provided by the '135 specification. For example, both Jones and the '135 patent explain that in computers equipped with certain PCMCIA-complaint software ("[t]he standard 'Socket Services' and 'Card Services' card-interface software"), the software simply identifies the card when plugged in. Appx317, l. 32–Appx318, l. 4; Appx76, at 9:55–65. Both Jones and the '135 patent explain that, for computers without this software, the computer must query certain information stored in a specific portion of memory on the PCMCIA card (called "attribute memory") in order to gather the necessary information required to connect the card to the host computer. Appx318, at ll. 4–9; Appx76, at 10:26–41. SPEX's brief does not address, much less rebut, that these teachings are recited both in the specification of its patent and in the Jones reference.

SPEX's arguments, instead, are largely directed to form rather than substance. SPEX argues (at 24) that the Board's decision was justified because claim 55 "explicitly requires" receiving and providing, which SPEX claims Jones does not disclose because Jones does not explicitly recite these two steps. But this Court and its predecessor have long held a prior art reference need not recite *ippsissimis verbis* the language used in the claims in order to anticipate—such a test would "exalt form over substance." *In re: Schaumann*, 572 F.2d 312, 317 (C.C.P.A. 1978); *see also, e.g., In re Bond*, 910 F.2d 831, 832 (Fed. Cir. 1990) (explaining that the test for anticipation is "not an 'ipssissimis verbis' test"); *In re: May*, 574 F.2d 1082, 1090 (C.C.P.A. 1978) (holding that

"[a] reference does not fail as an anticipation merely because it does not contain a description of the subject matter of the appealed claim in ipsissimis verbis").

Rather, what matters is substance, and if a prior art reference "sufficiently describe[s] the claimed invention" so as to "have placed the public in possession of it," it anticipates. *In re Donohue*, 766 F.2d 531, 533 & n.7 (Fed. Cir. 1985); *see also Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015) (explaining that "a reference can anticipate a claim even if it does not expressly spell out all the limitations arranged or combined as in the claim, if a person of skill in the art, reading the reference, would at once envisage the claimed arrangement or combination" (internal quotation marks and alterations omitted)); *In re: Baxter Travenol Labs.*, 952 F.2d 388, 390 (Fed. Cir. 1991) (explaining that the "dispositive question regarding anticipation" is not whether the exact language used in a claim is recited in the prior art but rather whether "one skilled in the art would reasonably understand or infer" that the invention was known "from [the prior art's] teaching"). That substance, as discussed above, is the same in both the '135 specification and in Jones.

SPEX also ignores substance in focusing on a single word in Jones—"automatically"—rather than the actual teachings of the Jones reference. Notably, though SPEX claims the Board made a finding that Jones does not anticipate because of this single word in its Final Written Decision, the portions of the Board's decision actually explaining why it reached the decision do not include a discussion of the word "automatically." *See* Appx27–30. The discussion of "automatically" appears in the

Board's summary of why it initially denied institution of this claim. *See* Appx19–20. In other portions of its discussion, the Board explicitly adopted the reasoning of its institution decision in its final determinations. *See, e.g.,* Appx29 ("As we stated in our discussion of claim 58 in the Institution Decision …"); Appx34 ("For these reasons and the reasons stated in our Institution Decision as summarized above …). The Board did not do so with respect to its determination at institution regarding "automatically"—suggesting that the Board did not carry its reasoning from the institution decision through to its Final Written Decision.

This is more than mere semantics. This Court has recognized that institution is a separate determination than the Final Written Decision—the decision at institution addresses whether the petition demonstrates a "reasonable likelihood of success" and the Final Written Decision finally adjudicates the "patentability" of the challenged claims. *See, e.g., St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, 749 F.3d 1373, 1375 (Fed. Cir. 2014). "[T]he statute would make very little sense" if it allowed the Board to simply carry through its decision at institution into the Final Written Decision without further explanation. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 814 F.3d 1309, 1315 (Fed. Cir. 2016); *overruled by Aqua Prod., Inc. v. Matal*, 872 F.3d 1290 (Fed. Cir. 2017). The statute provides all sorts of mechanisms for further development of the factual record and arguments which "allow the Board to issue a final decision based on a full record rather than just on the limited record in the initial petition and the patent owner's preliminary response." *See id.*

Indeed, during the development of arguments after the Board instituted on claims 55–57, Kingston emphasized to the Board the similarity between the disclosure of Jones and the disclosure of the '135 patent, providing greater context for what the word "automatically" means in the Jones reference. *See, e.g.,* Appx1741–1742 (arguing that Jones anticipates because it identifies the exact same PCMCIA functionality as the '135 patent "to the same level of detail" and arguing that it would be "improper" to "require of the prior art a greater level of technical detail than would be required of the patent itself to support" the claims); Appx1747–1748 (explaining that the word "automatic" in Jones simply refers to the "point of view of a user" in that "[y]ou plug in your PCMCIA card, and it connects itself to the computer").

Yet the Board's decision didn't address these arguments in its Final Written Decision, nor did it really provide any real explanation as to why it determined Jones's disclosure of the exact same PCMCIA processes described in the specification of the '135 patent were insufficient to teach what that description enabled. The Board simply assumed that Jones didn't anticipate without inherency. *See* Appx27 ("Because Jones does not *expressly* disclose the receiving and providing steps of claim 55, it was Petitioner's burden to show that these steps were necessarily present, i.e. that they were inherently disclosed.") As the Board did not articulate anything regarding Jones's use of the word "automatically" in justifying its determination regarding claim 55, it cannot serve as a basis for upholding the PTO's decision here. "[C]ourts may not accept appellate counsel's post hoc rationalizations for agency action." *Motor*

*Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983). This is because "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Id.*

However, even if this Court accepts SPEX's contention that the Board relied on Jones's use of the word "automatically," it serves as no justification for the Board's ultimate conclusion. This Court's precedents dictate that prior art references must be considered in their "totality." *See, e.g., In re Donahue*, 632 F.2d 123, 126 (CCPA 1980); *In re: Schaumann*, 572 F.2d 312, 317 (CCPA 1978). Yet SPEX would have this Court ignore the total substance of the teachings of Jones focus on a single word taken out of context.

Jones doesn't just say that the computer "automatically" identifies a peripheral when plugged in through magic—Jones explains how that happens. In particular, the full quote that contains the word "automatically" reads:

> To implement the PCMClA interface standard, the secure memory card includes a non-volatile attribute memory 190 which stores information enabling the host computer to automatically identify the particular PCMCIA card as soon as the card and host are connected, and to automatically establish the appropriate hardware/software interface using suitable driver software which executes on the host computer 110.

Appx314, at ll. 24–29. The full quotation makes clear that what Jones is talking about is part of the PCMCIA specification and that it involves reading "information" stored in "a non-volatile attribute memory" to "identify the particular PCMCIA card as soon

as the card and host are connected" without user intervention, i.e. automatically. *See id.* Later in the Jones reference, Jones explains exactly how this happens. *See* Appx318, at ll. 4–9 (explaining that the "device driver" on the host computer "***directly interrogates*** the CIS structures in the attribute memory"). SPEX points to no authority that would justify a decision based on a single word in a prior art reference that ignores both the substance as to what that reference teaches.

Of course, as discussed above, this mirrors the disclosure set forth in the specification of the '135 patent explaining how the disputed "receiving" and "providing" steps are performed. *See* Appx76, at 10:26–41 (explaining how the host computing device "can identify the type of a peripheral device" by accessing "attribute memory"). As such, Jones anticipates, and the Board erred in concluding otherwise.

### B. The Board Erred in Its Consideration of the PCMCIA Specification

Although Jones's disclosure is sufficient to anticipate the "receiving" and "providing" claims because it provides the same level of detail as the '135 specification, Kingston submitted the PCMCIA specification as supplemental information to show how PCMCIA cards (like those described in Jones and the '135 patent) connect to a host computer. These standards documents provide information regarding how a skilled artisan would have understood the teachings of Jones, and provide numerous processes that host computers use to read information off of a PCMCIA. The Board should have considered these documents as supporting

evidence regarding the knowledge of a skilled artisan. Yet the Board determined that claim 55 was patentable because, in its view, Kingston hadn't shown that that the processes described in PCMCIA specification were part of PCMCIA card disclosed in Jones, erroneously applying an overly strict standard for inherency.

In its brief, SPEX appears to acknowledge, as the Board did below, that the portions of the PCMCIA specification identified by Kingston do teach a process whereby PCMCIA card receives a request from the host computer for information about the card and provides information in response. *See* Appx27 (acknowledging that the "GetTupleData or GetConfigurationInfo commands appear to provide two potential ways that a host computer could request information from a PCMCIA-complaint card"); Red Br. at 24. Indeed, SPEX argues that the '135 specification's reference to PCMCIA and claim 55's recitation of "receiving" and "providing" mean that a skilled artisan would know to implement the portions of the PCMCIA standard relied on by Kingston. *See* Red Br. at 24. Yet SPEX argues that the Board did not err in concluding the same thing with respect to Jones.

SPEX begins by nitpicking at the PCMCIA documents themselves. SPEX contends that the Board properly discounted the PCMCIA documents Kingston submitted because Kingston's description read "Excerpts from Exhibits G & H to Exhibit 1015, PCMCIA PC Card Standard" when the exhibit contained excerpts from two different portions of the PCMCIA Standard. *See* Red Br. at 30. Notably, this was not an argument made by SPEX below, *see generally* Appx1653–1666, nor was it a

concern raised by the Board during the oral hearing, *see generally* Appx1731–1795. As Kingston never had an opportunity to address this concern that eventually formed part of the Board's final decision, it should not be accepted as a justification for the Board's decision. *See Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1080 (Fed. Cir. 2015) (holding that PTAB "may not change theories in midstream without giving respondents reasonable notice of the change and the opportunity to present argument under the new theory" (internal quotation marks omitted)); *see also Dell Inc. v. Acceleron, LLC*, 818 F.3d 1293, 1301 (Fed. Cir. 2016) (finding that "the Board denied" a party's procedural due process rights "by relying in its decision on a factual assertion introduced into the proceeding only at oral argument, after [the party] could meaningfully respond").

The Board erred by not providing Kingston any opportunity to address the Board's concerns and instead raised them for the first time in its Final Written Decision. Had Kingston been provided an opportunity to address this issue, Kingston would have explained that the PCMCIA Standard is made up of various specifications describing different aspects of PC Cards. For example, as shown at the beginning of the PCMCIA Standard, the standard consists of a "PC Card Standard Specification" (Release 2.01), a "Socket Services Specification" (Release 2.00), a "Card Services Specification" (Release 2.00), a "PC Card ATA Mass Storage Specification" (Release 1.01), an "AIMS Specification" (Release 1.01); and a document describing "Recommended Extensions" (Release 1.00). *See* Appx1560. The two specification

Kingston submitted to the Board—the "PCMCIA PC Card Standard, Release 2.01" (*see* Appx1572–1621) and the "PCMCIA Card Services Specification, Release 2.0" (*see* Appx1623–1630)—are both part of the same PCMCICA Standard, published in November, 1992. *See* Appx1558–1559. This is exactly the same standard referred to by the Jones reference. *See* Appx314, at ll. 22–23 ("The present embodiment of invention conforms to the PC Card Standard Specification, Release 2.01, published in November, 1992."). SPEX presented no evidence to the Board that the submitted standard was wrong and, indeed, the Board provided no contrary evidence either.

SPEX also argues (at 31–32) that the Board properly rejected consideration of the portions of the PCMCIA standard identified by Kingston because, according to SPEX, the excerpts describe optional parts of the standard. As explained in Kingston's opening brief, this determination is unsupported by any evidence. Nothing in the PCMCIA Standard states that the features described are optional. The Board's conclusion rested on what the Board acknowledged was speculation about what may have been contained in other parts of the Standard not submitted by Kingston. *See* Appx28–29 ("Without complete versions of these documents or persuasive evidence that the GetTupleData and GetConfigurationInfo commands provided the only means by which a PCMCIA-compliant card could have provided module type information to a host, we can only speculate as to what else might be disclosed in them"). However, "[s]peculation does not constitute substantial evidence." *Univ. of S.C. v. Univ. of S. California*, 367 F. App'x 129, 134 (Fed. Cir. 2010);

*see also Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1351 (Fed. Cir. 2006 ("Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established."). Accordingly, the Board's decision in rejecting Kingston's evidence on the basis of speculation cannot be justified.

The only thing SPEX points to in support of its argument is a single passage stating that some PCMCIA clients may not need to further process information from stored in attribute memory because those clients "receive all of the information they require from the CARD_INSERTION event." *See* Red Br. at 31–32; *see also* Appx1623. This passage, though, does not suggest that reading information from the PCMCIA card is optional—rather it suggests that the additional commands discussed may not be necessary if the host computer requests and receives all of the information it needs from a different process (the CARD_INSERTION event). *See* Appx1623. Notably, Kingston cited the portion of the specification addressing the CARD_INSERTION event and the associated "Callback" command which appears just two pages after the passage cited by SPEX. As the PCMCIA document explains, "[c]lients may have enough information provided by a GetConfigurationInfo request to determine if they wish to use the PC Card. If they do not have enough information, clients may use Card Services functions to further process the CIS." *See* Appx1625–1626; *see also* Appx1014 (explaining that "when a card is inserted into a host computer, Card Services uses a Callback function that attempts to read the CIS"

(internal quotation marks and alterations omitted) (citing Appx1625–1626)). Thus, far from suggesting that these are optional features, the only evidence of record shows that the host computer must request and receive information about the type of PCMCIA card when it is inserted, even though clients may additionally request more information later. SPEX offers nothing to the contrary, other than its speculation based on a single passage out of the many cited by Kingston.

As to the inherency analysis itself, SPEX argues that the Board properly applied this Court's inherency precedents. SPEX offers nothing more than a generic recitation of the black-letter law that inherency requires that the limitation at issue "necessarily must be present." There is no dispute as to the appropriate standard for inherency—only as to the Board's application of that standard. Here, Jones states that its invention is compliant with the standard—without reservation or equivocation. *See* Appx314, at ll. 22–23 ("The present embodiment of invention conforms to PC Card Standard Specification …"). Jones then also goes on to describe, with reference to the standard, "storing information" that can be read by "the host computer to automatically identify the particular PCMCIA card as soon as the card and host are connected" (*see* Appx314, at ll. 24–29) and to explain that the techniques for the host computer to "directly interrogate[] the CIS structures in the attribute memory" are provided by the "PCMCIA Card Services interface" (Appx317, l. 32–Appx318, l. 8). Kingston then pointed to functions described in the same version of the standard which provide for automatic identification of a card when it is

inserted (the callback command, *see* Appx1625–1626) and for additional commands which allow the host computer to directly read information from the CIS structures in the attribute memory (e.g., GetTuple and related commands, *see* Appx1623, and GetConfigurationInfo, *see* Appx1627–1628).

It is unclear what, if anything, would have convinced the Board that the commands described in the standard for reading information off of the PCMCIA card were inherent in Jones apart from a recitation of the exact commands themselves. But this asks far too much. The point of inherency, after all, is to determine whether a prior art reference necessarily discloses some aspect of an invention that is not explicitly described. *See, e.g., MEHL/Biophile Intern. Corp. v. Milgraum*, 192 F.3d 1362, 1365 (Fed. Cir. 1999) ("[A] prior art reference may anticipate when the claim limitation or limitations not expressly found in that reference are nonetheless inherent in it."). It would make very little sense to require, as part of the showing for inherency, that the exact material inherent in the reference was also explicitly described in it.

Because the Board erred by failing to consider the PCMCIA specification as evidence as to the knowledge of a skilled artisan and instead applied an overly-strict standard for inherency that required the inherent material to be explicit in the prior art, the Board's determination should be at least vacated and remanded with appropriate instructions.

### C. The Board Erred By Failing to Consider Clear Admissions Made by SPEX's Litigation Expert

Lastly, the Board erred in its consideration of claim 55 by failing to consider clear admissions made by SPEX's litigation expert that a device compliant with the PCMCIA standard—such as the PCMCIA card taught by Jones—teaches the claimed "receiving" and "providing" steps.

Again, SPEX does not dispute the substance of the admissions made by its expert, nor could it. The admissions were unambiguous. The expert was directly asked whether a PCMCIA-compliant card would teach substantively identical limitations from a nearly-identical claim, and he unequivocally answered "it would have been met" and "[i]n my opinion, that's true." *See* Appx1166:24–1167:3; Appx1167:18–24. All SPEX says of the substance of the admissions is that the expert's testimony "focused on the scope of possible disclosures within the PCMCIA standard generally, and they were not asked in the context of the Jones reference or the specific pages of the PCMCIA document excerpted in Exhibit 1017." Red Br. at 9. SPEX's attempt to avoid the effect of its expert's admissions, though, is disingenuous at best. Contrary to SPEX's assertion, the questions were asked in the context of the PCMCIA documents submitted to the Board and, in particular, the sections excerpted, as the document was provided to SPEX as part of Kingston's invalidity case, with specific citations to the same sections of the PCMCIA Standard.

*See, e.g.,* Appx1510–1514 (citing to the PCMCIA standard provided to the Board and explaining the sections that were excerpted to provide to the Board).

SPEX also does not, and cannot, dispute the fact that the Board failed to provide any reason for discounting these clear admissions in its Final Written Decision. SPEX argues (at 33–34) that the Board must have considered the admissions because the Board summarized Kingston's evidence and arguments, and then argues that it is immaterial that the Board didn't address the admissions in the portion of its opinion explaining why it reached the decision it did. While it is true that the Board need not explain why it dismissed every minor piece of evidence or argument raised by a party, the evidence the Board failed to address here consisted of key admissions made by the patent owner's expert under oath in deposition that were addressed by Kingston at length—making this case far different than the case cited by SPEX. *Cf. Novartis AG v. Torrent Pharm. Ltd.*, 853 F.3d 1316, 1328 (Fed. Cir. 2017) (finding no error in the Board failing to explicitly address a "cursory argument" made in "one passing, unsupported sentence"); *see also* Appx 1011–1012, Appx1014–1015 (addressing the expert's admissions at length). This Court has previously found error in the Board's refusal to admit similar evidence of a litigation expert making admissions relevant to disputed issues in an IPR. *See Ultratec, Inc. v. CaptionCall*, LLC, 872 F.3d 1267, 1275 (Fed. Cir. 2017). The Board does not avoid this error by admitting the evidence and then subsequently ignoring it.

It is no answer, as SPEX contends, to speculate as to why the Board might have found this evidence unconvincing. *See* Red Br. at 35–36. The Board is required to provide reasons for making the decisions it reaches sufficient for this Court to exercise judicial review. As this Court has recognized, the Administrative Procedures Act requires that the Board "not only have reached a sound decision" but also to "have articulated the reasons for that decision" in order to allow this Court to "perform meaningful review within the strictures of the APA." *In re Sang Su Lee*, 277 F.3d 1338, 1342 (Fed. Cir. 2002) (citing *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 416 (1971)). "Judicial review of a Board decision denying an application for patent is thus founded on the obligation of the agency to make the necessary findings and to provide an administrative record showing the evidence on which the findings are based, accompanied by the agency's reasoning in reaching its conclusions." *Id.* Thus, to satisfy this standard, the agency must provide reasons for the decisions it makes, and any affirmance of that decision must be based on the reasons provided by the agency and not post-hoc reasoning supplied on appeal. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 50.

The Board did not provide any reason for dismissing the admissions made by SPEX litigation expert. This is likely because the Board could find no such reason—these were clear admissions made by an expert hired by SPEX to address patentability in the district court litigation, who opined on issues directly relevant in the IPR. However, even if the Board did have a reason, it was required to explain it in a

manner sufficient for this Court to exercise review. Because the Board did not, the Board's decision cannot be upheld.

Lastly, it is of no moment that Kingston cited a few additional passages from the deposition that were not explicitly cited below. *See* Red Br. at 35. Kingston was given only ten pages with which to address all of the supplemental information, and Kingston highlighted the key admissions made by the expert during the deposition. Appx 1011–1012, Appx1014–1015. The material cited to this Court simply provided additional context for, and was duplicative of, the material cited to the Board. In any event, Kingston's citation of additional material to fully tell the story to this Court is no justification for the Board ignoring the material explicitly cited to it.

## II. The Board's Determination Regarding Claim 57 Should Be Reversed

The Board's determination that claim 57 is patentable over Jones should also be reversed. As noted in Kingston's opening brief, the dispute below centered around two limitations: "communicating with the host computing device to exchange data between the host computing device and the modular device" and "performing one or more security operations and the defined interaction on the exchanged data." Jones undisputedly teaches these limitations exactly as how SPEX has alleged infringement of them, and thus Jones anticipates. The Board, however, upheld the patentability of this claim based on its erroneous determination that Kingston had presented a new theory of patentability in its brief regarding the supplemental information it allowed Kingston to submit.

SPEX's response on this point, like the Board's decision below, does not address the teachings of Jones at all. *See* Red Br. at 36–39. These teachings clearly provide that the host computer communicates data with Jones's disclosed PCMCIA memory card. *See, e.g.*, Appx314, at ll. 1–4. Jones teaches that hardware within the memory card encrypts the data and then stores that encrypted data. *See, e.g.,* Appx317, at ll. 3–15. These teachings mirror how the specification of the '135 patent describes the operation of one embodiment of the claimed "modular device." *See* Blue Br. at 12–13.

SPEX also does not deny that it has alleged that the very same features taught by Jones (data communication, encryption, and data storage) infringe these limitations of claim 57. SPEX attempts to muddy this issue (at 38–39), faulting Kingston for not providing direct quotations to SPEX's infringement report and for providing citations to multiple parts of the report. Any confusion, though, lies at the feet of SPEX. The reason Kingston provided multiple citations to the infringement report was because SPEX's litigation expert referred back to earlier parts of his report rather than performing a separate analysis for these limitations of claim 57. *See* Appx1098 (analysis of claim 57, referring back to analysis of claim 39 of the '802 patent); Appx1093–1094 (analysis of claim 39 of the '802 patent, referring back to claim 1 of the '802 patent). When these cross-references are traced back to their origin, it is clear that SPEX alleges that data communication meets the "communicating" limitation and that data encryption and storage meets the "performing" limitation—regardless

of whether Kingston specifically quoted portions of the report. *See* Appx1094 (alleging that the accused product "performs one or more security operations and it performs the defined interaction on the exchanged data" because the device "encrypts data before being written on the mass user data storage memory"); Appx1076 (alleging that the accused device "enables a defined interaction" because it "enables the mass storage of user data from the host computing device"). This is, of course, the same functionality described in Jones (as discussed above) and SPEX never contends otherwise.

Thus, there is no dispute that these limitations are taught by Jones—the only dispute is over whether Kingston sufficiently identified data storage as the "defined interaction" in its petition. And on that point, SPEX fails to provide any response other than repeating the substance of the Board's Final Written Decision. Of particular note, SPEX offers no response to the fact that Kingston pointed to memory modules adapted to store data as the claimed target module "adapted to enable a defined interaction." *See* Appx1815. Although the Petition admittedly did not use the words "data storage," a memory module is storage and the clear meaning is that this storage enabled a "defined interaction" performed by the memory card of Jones. All Kingston did after it was allowed to submit supplemental information was to clarify the theory articulated in the petition in response to the Board's criticisms at institution and in response to how SPEX had alleged infringement of this claim.

Contrary to SPEX's assertion, this Court did not endorse such a formalistic application of the rules in *In re Magnum Oil Tools Int'l, Ltd.*, 829 F.3d 1364, 1380 (Fed. Cir. 2016). In that case, the question wasn't whether the petitioner could modify her theory throughout the process of an IPR—rather the case asked whether the Board could, on its own, articulate an invalidity theory in its Final Written Decision that had not been made by the petitioner. *See id.* This Court concluded that the Board was not "free to adopt arguments on behalf of petitioners that could have been, but were not, raised by the petitioner during an IPR" but rather was required to "base its decision on arguments that were advanced by a party, and to which the opposing party was given a chance to respond." *See id.* at 1381. Thus, as this Court found, "while the PTO has broad authority to establish procedures for revisiting earlier-granted patents in IPRs, that authority is not so broad that it allows the PTO to raise, address, and decide unpatentability theories never presented by the petitioner and not supported by record evidence." *Id.*

None of the concerns motivating this Court's decision in *Magnum Oil Tools* are at issue here. For one, Kingston did, in fact, make the argument—both in the petition and in its brief addressing the supplemental information. *See* Appx1815; Appx1016–1018. Kingston's argument was based both on the record evidence (Jones's teachings) and based on new information that came to pass during the IPR (SPEX's infringement allegations). And any concerns regarding SPEX's ability to respond to this slight clarification of Kingston's position were ameliorated by the fact

that SPEX was allowed to file, and indeed did file, a responsive brief. Neither SPEX nor the Board identified any harm to SPEX nor any other justification for ignoring Kingston's argument, apart from a formalistic application of a rule. As such, the Board's decision regarding claim 57 should be reversed.

## CONCLUSION

For the reasons above and those stated in Kingston's opening brief, this Court should reverse, or, at a minimum, vacate the Board's decision finding claims 55–57 patentable.

Dated: August 2, 2019

Respectfully submitted,

*/s/ Oliver J. Richards*

Oliver J. Richards
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070

*Attorneys for Appellants Kingston Technology Company, Inc.*

## CERTIFICATE OF SERVICE AND FILING

I certify that I electronically filed the foregoing document using the Court's CM/ECF filing system on Friday, August 2, 2019. Counsel was served via CM/ECF on August 2, 2019.

*/s/ Oliver J. Richards*
Oliver J. Richards

## CERTIFICATE OF COMPLIANCE

The undersigned attorney certifies that Appellants' Opening Brief complies with the type-volume limitation set forth in Federal Circuit Rule 32(a). The relevant portions of the brief, including all footnotes, contain 6,470 words, as determined by Microsoft Word.

Dated: August 2, 2019

*/s/ Oliver J. Richards*

Oliver J. Richards
Fish & Richardson P.C.
12390 El Camino Real
San Diego, CA 92130
(858) 678-5070