NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

______________________

**KINGSTON TECHNOLOGY COMPANY, INC.,**
*Appellant*

**v.**

**SPEX TECHNOLOGIES, INC.,**
*Appellee*

______________________

2019-1256

______________________

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. IPR2017-01021.

______________________

Decided: February 21, 2020

______________________

DAVID M. HOFFMAN, Fish & Richardson, P.C., Austin, TX, argued for appellant. Also represented by OLIVER RICHARDS, San Diego, CA.

KRISTOPHER DAVIS, Russ August & Kabat, Los Angeles, CA, argued for appellee. Also represented by MARC AARON FENSTER, PAUL ANTHONY KROEGER, BENJAMIN T. WANG.

______________________

Before DYK, O'MALLEY, and STOLL, *Circuit Judges*.

STOLL*, Circuit Judge.*

Kingston Technology Company, Inc. appeals the Patent Trial and Appeal Board's final written decision declining to find claims 55–57 of U.S. Patent No. 6,003,135 anticipated by PCT Application WO 95/16238 (Jones). Because substantial evidence supports the Board's determination that Jones does not expressly or inherently disclose certain limitations of claims 55 and 56, we affirm as to those claims. With regard to claim 57, we hold that the Board abused its discretion when it rejected Kingston's supplemental briefing for purportedly presenting a new theory of invalidity. We therefore vacate the Board's decision as to claim 57 and remand for the Board to consider Kingston's supplemental briefing addressing claim 57.

## BACKGROUND

### I

The '135 patent, titled "Modular Security Device," is directed to a modular, typically portable, device that communicates with a host computing device—e.g., a host computer. The disclosed modular device contains a security module and a target module. The security module provides security functionality such as encryption or password control, while the target module provides non-security functionality such as data storage, biometric scanning, a modem, or a smart card reader. The '135 patent discloses that separating the security elements of the modular device from other functionality provides for a single security module that can be used to provide security to multiple types of interactions with the host computer.

In certain embodiments, the security module can be positioned inline such that all communications between the target module and the host computer must travel through it. The same security module can also be used with a variety of target modules, thereby increasing flexibility. In addition, the modular device can be implemented to assume

the identity of the target module such that the security module is transparent to the host computer.

Claims 55 and 57 are illustrative:

> 55. For use in a modular device adapted for communication with a host computing device, the modular device comprising a security module that is adapted to enable one or more security operations to be performed on data and a target module that is adapted to enable a defined interaction with the host computing device, a method comprising the steps of:
>
> *receiving a request from the host computing device for information regarding the type of the modular device*;
>
> *providing the type of the target module to the host computing device in response to the request*; and
>
> operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device.
>
> . . .
>
> 57. For use in a modular device adapted for communication with a host computing device, the modular device comprising a security module that is adapted to enable one or more security operations to be performed on data and a target module that is adapted to enable a defined interaction with the host computing device, a method comprising the steps of:
>
> *communicating with the host computing device to exchange data between the host computing device and the modular device*;

> *performing one or more security operations and the defined interaction on the exchanged data*;
>
> mediating communication of the exchanged data between the host computing device and the modular device so that the exchanged data must first pass through the security module; and
>
> operably connecting the security module and/or the target module to the host computing device in response to an instruction from the host computing device.

’135 patent col. 26 ll. 12–53 (emphases added to highlight disputed claim limitations).

The specification of the ’135 patent explains that some embodiments conform to the PCMCIA standard. PCMCIA cards, popularized in the 1990s, were removable modules with a variety of functions—e.g., modem, smart card reader, data storage—that could be inserted into a designated slot in a laptop computer. The Personal Computer Memory Card International Association established the standard for PCMCIA cards (hence the name),[1] and the PCMCIA standard is comprised of multiple discrete specifications.

## II

Jones is the only prior art reference at issue on appeal. Jones is a PCT Application directed to “[a] detachable PCMCIA memory card . . . incorporating a smartcard integrated circuit.” Jones at Abstract. The memory card of Jones provides removable data storage secured by a password, encryption, or both.

Jones discloses at least one embodiment that conforms to the PCMCIA standard. Jones specifically cites to the

---

1 PCMCIA cards were later dubbed “PC Cards.”

"PC Card Standard Specification, Release 2.01, published in November, 1992," but does not expressly incorporate that specification by reference. Jones col. 5 ll. 22–23; *see also id.* at col. 8 ll. 26–29 (similar). Elsewhere, Jones explains that "[t]he programming interface to the PCMCIA Card Services software is defined in Section 3 of the PCMCIA Standard (Release 2.01)," but again does not expressly incorporate that disclosure by reference. *Id.* at col. 9 ll. 16–19.

III

Kingston petitioned for inter partes review of claims 55–58 of the '135 patent based on anticipation by Jones, obviousness over Jones alone, and obviousness over Jones in view of other prior art. The Board initially declined to institute review for claims 55–57, but modified its institution decision to include those claims following *SAS Institute, Inc. v. Iancu*, 138 S. Ct. 1348 (2018). The Board then permitted Kingston to submit supplemental information pursuant to 37 C.F.R. § 42.123. The Board also authorized the parties to file supplemental briefing addressing the supplemental information submitted by Kingston.

The Board issued a final written decision in which it held claim 58 unpatentable, but declined to hold claims 55–57 unpatentable. *See generally Kingston Tech. Co. v. SPEX Techs., Inc.*, No. IPR2017-01021, 2018 WL 4773543, at *1 (P.T.A.B. Oct. 1, 2018) ("*Decision*"). Relevant here, the Board found that Kingston had failed to show by a preponderance of the evidence that claims 55–57 of the '135 patent are anticipated by Jones.[2] In so finding, the Board declined to consider Kingston's supplemental

---

[2] Although not at issue on appeal, the Board also rejected Kingston's obviousness arguments based on Jones alone and in combination with other references.

briefing regarding claim 57 because Kingston had, in the Board's assessment, presented "new argument and new invalidity theories not presented or relied upon in the Petition." *Id.* at *12 (first citing 37 C.F.R. § 42.23(b); then citing Office Patent Trial Practice Guide, August 2018 Update 14, https://go.usa.gov/xU7GP).

Kingston appeals the Board's finding of no anticipation of claims 55 and 56 along with the Board's refusal to consider Kingston's arguments addressing claim 57 in its supplemental briefing. We have jurisdiction under 28 U.S.C. § 1295(a)(4)(A).

## DISCUSSION

### I

We first address the Board's finding of no anticipation of claims 55 and 56. "A patent claim is invalid as anticipated only if each and every element of the claim is expressly or inherently disclosed in a single prior art reference." *Guangdong Alison Hi-Tech Co. v. Int'l Trade Comm'n*, 936 F.3d 1353, 1363 (Fed. Cir. 2019) (first citing 35 U.S.C. § 102 (2006);[3] then citing *SRI Int'l, Inc. v. Internet Sec. Sys., Inc.*, 511 F.3d 1186, 1192 (Fed. Cir. 2008)). Anticipation is a question of fact that we review for substantial evidence. *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1341 (Fed. Cir. 2016) (citing *Kennametal, Inc. v. Ingersoll Cutting Tool Co.*, 780 F.3d 1376, 1381 (Fed. Cir. 2015)). For the reasons that follow, we conclude

---

[3] Because the '135 patent does not contain any claim with an effective filing date on or after March 16, 2013, the applicable version of 35 U.S.C. § 102 is the one preceding the changes made by the America Invents Act. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29 § 3(n), 125 Stat. 284, 293 (2011).

that the Board's findings as to claims 55 and 56 are supported by substantial evidence, and accordingly, we affirm.

Claim 55 recites, in relevant part, "receiving a request from the host computing device for information regarding the type of the modular device," and "providing the type of the target module to the host computing device in response to the request." '135 patent col. 26 ll. 19–22. Claim 56 depends from claim 55 and therefore includes the same "receiving" and "providing" limitations.

In its petition, Kingston identified certain passages of Jones as disclosing the "receiving" and "providing" limitations. In particular, Kingston pointed to Jones's disclosure that, "[t]o implement the PCMCIA interface standard," its secure memory card "stores information enabling the host computer to *automatically identify* the particular PCMCIA card as soon as the card and host are connected." Jones col. 5 ll. 24–29 (emphasis added). The Board was not persuaded by this passage because, in its view, "automatically identify" is not specific enough to disclose the separate "receiving" and "providing" steps of claim 55. Indeed, the Board noted that Jones's reference to "automatic" identification actually suggests that Jones does not require *any* request from the host computer prior to the identification of the PCMCIA card.

In support of its supplemental briefing for claims 55 and 56, Kingston submitted excerpts from two PCMCIA standard specifications. Before the Board, Kingston contended that this additional evidence established that the "automatic" identification of Jones incorporates functions from the PCMCIA standard that satisfy the "receiving" and "providing" limitations of claims 55 and 56. In particular, Kingston pointed to the GetTupleData and GetConfigurationInfo functions as implementing the automatic identification described in Jones.

The Board was not persuaded by the additional evidence submitted by Kingston. Although Jones expressly

references the "PC Card Standard Specification, Release 2.01, published in November, 1992," Jones col. 5 ll. 22–23, the Board noted that Jones does not incorporate that specification by reference. And even assuming that Jones incorporates the identified specification, the Board noted that the functions relied on by Kingston are described in a *different* specification, the PCMCIA Card Services Specification, Release 2.0.

Finding no express disclosure in Jones, the Board turned to inherent disclosure. The Board found that Jones also fails to inherently disclose the "receiving" and "providing" limitations through its general references to the PCMCIA standard. Specifically, the Board was unpersuaded that a person of ordinary skill in the art would have understood the automatic identification of Jones to require use of the GetTupleData and GetConfigurationInfo functions—not least because Jones makes no reference to the PCMCIA specification that describes those functions. Even assuming that an ordinarily skilled artisan would have understood Jones's "automatic" identification to reference those functions, the Board further reasoned that the specification identified by Kingston provides no indication that the functions are mandated by the PCMCIA standard. Indeed, the passage that Kingston cited for the GetTupleData function explains that

> Card Services clients *may* need to process a PC Card's Card Information Structure (CIS) to determine if and how they will interact with a card detected in a socket. (*Some clients may receive all the information they require from the CARD_INSERTION event*).

J.A. 1623 (emphases added).

On this record, we cannot say that the Board's finding of no anticipation is unsupported by substantial evidence. Kingston bore the burden of proof on this issue, and there are numerous material flaws in the evidence that Kingston

presented. The Board reasonably found that Jones itself does not expressly disclose the limitations at issue through its automatic identification feature, and further that Jones does not incorporate by reference any PCMCIA specification, much less the ones proffered by Kingston. The Board also reasonably declined to find inherent anticipation here, where Kingston's theory of invalidity relies on multiple inferential leaps. In particular, Kingston's theory requires an inference that an ordinarily skilled artisan would have understood Jones's general reference to the PCMCIA standard to *necessarily* disclose the use of the GetTupleData and GetConfigurationInfo functions—the use of which, based on the official descriptions provided by Kingston, does not appear to be a requirement of the PCMCIA standard. *See Alison*, 936 F.3d at 1364 ("An element may be inherently disclosed only if it 'is "necessarily present," not merely probably or possibly present, in the prior art.'" (quoting *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1380 (Fed. Cir. 2002))).

We have considered the other arguments advanced by Kingston—including that Jones must disclose the limitations at issue because it discloses the initial communication at the same level of detail as the '135 patent; that the Board's application of inherency was too strict; and that the Board ignored key evidence and arguments from a parallel district court litigation—but we discern no reversible error in the Board's analysis. We therefore affirm the Board's determination as to claims 55 and 56.

II

We next address the Board's finding of no anticipation of claim 57. Kingston specifically challenges the Board's rejection of its supplemental briefing for improperly presenting a new theory of invalidity for claim 57. We review the Board's decision not to consider a new argument for an abuse of discretion. *See Intelligent Bio-Sys., Inc. v. Illumina Cambridge Ltd.*, 821 F.3d 1359, 1367 (Fed. Cir.

2016). For the reasons that follow, we hold that the Board abused its discretion when it declined to consider the arguments addressing claim 57 in Kingston's supplemental briefing. We therefore vacate the Board's finding of no anticipation of claim 57 and remand to the Board for further consideration.

Claim 57 recites, in relevant part, "performing one or more security operations and the *defined interaction* on the exchanged data." '135 patent col. 26 ll. 45–46 (emphasis added). In its petition, Kingston identified the "defined interaction" in Jones as "the transfer of data between the host computer 110 and the data storage 150." J.A. 1825–26 (citing Jones col. 11 ll. 15–20).[4]

In its supplemental briefing, Kingston argued that SPEX Technologies, Inc., the patent owner, had taken a position regarding claim 57 in the IPR that was "directly contrary" its position on infringement in a parallel district court litigation. J.A. 1017. Kingston specifically pointed to the testimony of SPEX's litigation expert, who had purportedly identified data storage as the "defined interaction" in the accused devices. In the course of doing so, Kingston characterized its own argument in the petition as having established that "Jones allow[s] for the transfer *and storage* of data." J.A. 1016 (emphasis added) (citing J.A. 1824–26); *see also* J.A. 1017 ("Spex cannot argue that claim limitations can be met by transfer and storage of data for infringement purposes, then deny that transfer or storage of data is sufficient to anticipate these elements.").

In its final written decision, the Board rejected Kingston's supplemental arguments addressing claim 57 for

[4] Kingston similarly identified the "defined interaction" in the '135 patent as "the exchange of data between the host and the target module (memory)." J.A. 1824 (citing '135 patent col. 20 ll. 28–36).

improperly presenting a new theory of invalidity outside of the scope of the petition. The Board explained that Kingston's argument in the petition identified the "defined interaction" in Jones as the *transfer* of data, not the *storage* of data. According to the Board, "the only mention of the word 'storage' . . . in the Petition is a parenthetical statement identifying the physical components between which the 'transfer of data,' alleged in the Petition to be the recited 'defined interaction,' allegedly takes place." *Decision*, 2018 WL 4773543, at *12 (citing J.A. 1825–26). The Board thus concluded that Kingston's supplemental briefing on claim 57 constituted an "impermissible new argument" that the Board would not consider—regardless of any inconsistent positions that SPEX may have taken in the parallel litigation. *Id.*

On appeal, Kingston admits that it did not use the words "data storage" in its petition. But Kingston insists that its supplemental argument was proper because it merely clarified Kingston's original theory of invalidity for claim 57 in response to criticism from the Board and inconsistent litigation positions taken by SPEX.

We agree with Kingston. Although the Board "'has broad discretion to regulate the presentation of evidence,' that discretion is not without limits." *Altaire Pharm., Inc. v. Paragon Bioteck, Inc.*, 889 F.3d 1274, 1285 (Fed. Cir. 2018) (first quoting *Belden Inc. v. Berk-Tek LLC*, 805 F.3d 1064, 1081 (Fed. Cir. 2015); then citing *Ultratec, Inc. v. CaptionCall, LLC*, 872 F.3d 1267, 1274 (Fed. Cir. 2017)), *remand order modified by stipulation*, 738 F. App'x 1017 (Fed. Cir. 2018). We acknowledge that the Board's rules prohibit a petitioner from submitting new evidence or new argument in reply that the petitioner could have presented earlier. *See, e.g.*, 37 C.F.R. § 42.23(b). Indeed, we have repeatedly endorsed that proposition. *See, e.g.*, *Henny Penny Corp. v. Frymaster LLC*, 938 F.3d 1324, 1330–31 (Fed. Cir. 2019) (affirming Board's rejection of a reply argument presenting an "entirely new rationale" for why a claim would

have been obvious); *Intelligent Bio-Sys.*, 821 F.3d at 1369–70 (affirming Board's rejection of a reply argument presenting an "entirely new rationale" for motivation to combine). Yet we have also explained that "[p]arties are not barred from elaborating on their arguments on issues previously raised," *Chamberlain Grp., Inc. v. One World Techs., Inc.*, 944 F.3d 919, 925 (Fed. Cir. 2019) (citing *Interactive Gift Express, Inc. v. CompuServe Inc.*, 256 F.3d 1323, 1347 (Fed. Cir. 2001)), and that a reply argument is proper if it "cites no new evidence and merely expands on a previously argued rationale," *Ericsson Inc. v. Intellectual Ventures I LLC*, 901 F.3d 1374, 1381 (Fed. Cir. 2018).

Here, we conclude that Kingston did not improperly introduce new issues or new evidence relating to claim 57 in its supplemental briefing. Instead, Kingston's supplemental briefing merely elaborates upon its original argument in order to clarify that the identified *transfer* of data in Jones incorporates the act of *storing* that data. Kingston did not identify or discuss any new theory based on Jones in its supplemental briefing, citing instead to the corresponding pages of its petition. *See* J.A. 1016–17 (citing J.A. 1824–26).[5] Kingston's petition characterizes the defined interaction in Jones as "the *transfer* of data between the host computer . . . and the data *storage*." J.A. 1825–26 (emphases added). As Kingston points out, in common parlance "a memory module is storage." Reply at 24. And at oral argument before this court, counsel for SPEX conceded that the act of transferring data from a host computer to memory is normally understood to include the act of storing that data. *See* Oral Arg. at 28:28–28:41, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1256.mp3.

---

[5] The only new evidence offered by Kingston relating to claim 57—i.e., SPEX's arguments in district court—was previously unavailable because those arguments were made after the petition was filed.

Indeed, counsel for SPEX could not articulate any act beyond storage that would normally take place when data is transferred from a host computer to memory. *See id.* at 28:00–28:28.

On this record, Kingston's supplemental briefing on claim 57 is properly characterized as a "clarification of its prior position in response to [others'] arguments," as in *Chamberlain*, 944 F.3d at 925, not "an entirely new rationale" worthy of being excluded, as in *Intelligent Bio-Systems*, 821 F.3d at 1370. To hold otherwise would endorse an overly formalistic approach that would unduly inhibit a petitioner from responding to criticisms of issues that it properly presented in the petition. Accordingly, we vacate and remand for the Board to consider Kingston's arguments addressing claim 57 in its supplemental briefing.

## CONCLUSION

We have considered the parties' other arguments, and we do not find them persuasive. For the foregoing reasons, we affirm the Board's finding of no anticipation for claims 55 and 56, vacate the Board's finding of no anticipation for claim 57, and remand to the Board to consider Kingston's supplemental briefing on claim 57.

**AFFIRMED-IN-PART, VACATED-IN-PART, AND REMANDED**

## COSTS

No costs.